Deborah Belinda **JACKSON**, Plaintiff,

v.

**UNITED STATES POSTAL SERVICE,** Postmaster General, John E. Potter,[1] Defendant.

No. 99–2257–JWL.

United States District Court, D. Kansas.

Sept. 26, 2001.

---

1. Effective June 4, 2001, John E. Potter is the Postmaster General for the United States Postal Service. Pursuant to Federal Rule of Civil Procedure 25(d)(1), the court substitutes John E. Potter as the Postmaster General for William J. Henderson, former Postmaster General of the United States Postal Service.

Daniel D. Owen, Shughart, Thomson & Kilroy, Overland Park, KS, Michaela M. Warden, Blackwell Sanders Peper Martin LLP, Kansas City, MO, Luis Mata, Evans & Mullinix, P.A., Shawnee, KS, Sheila T. Williams, Leawood, KS, for plaintiff.

Robert A. Olsen, Office of United States Attorney, Kansas City, KS, for defendants.

**MEMORANDUM AND ORDER**

LUNGSTRUM, District Judge.

■ Plaintiff Deborah Belinda Jackson filed suit against defendant alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Specifically, plaintiff claims that she was subjected to sexual harassment by her supervisors; that she was denied various promotions and ultimately discharged on the basis of her race and/or gender and/or in retaliation for filing EEO complaints. This matter is presently before the court on defendant's motion for summary judgment (doc. # 79).[2] As set forth in more detail below, defendant's motion for summary judgment is granted in part and denied in part. Specifically, the motion is denied with respect to plaintiff's discriminatory discharge and retaliatory discharge claims. The motion is otherwise granted.

**I. Facts**

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Plaintiff began her employment with the Postal Service in January 1995 as a Part Time Flexible City Mail Carrier at the Junction City Post Office in Junction City, Kansas. On February 18, 1997, plaintiff injured her shoulder while she was delivering her route. After completing the delivery of her route, plaintiff returned to the Junction City Post Office and then went to the hospital for an examination of her injury. Plaintiff returned to work the following day with medical restrictions. Due to

**2.** Plaintiff's motion for leave to file a surreply (doc. # 92) with respect to defendant's motion is also pending before the court. Leave to file a surreply is generally only granted in "rare circumstances" as where the movant "improperly raises new arguments in a reply." *See Lintz v. American General Finance, Inc.,* 50 F.Supp.2d 1074, 1076 n. 1 (D.Kan.1999).

In its reply to plaintiff's response, defendant does not raise new arguments or theories in support of its motion for summary judgment. For this reason, plaintiff's motion for leave to file a surreply is denied and the court will not rely on plaintiff's proposed surreply in analyzing defendant's motion for summary judgment.

her injury and her medical restrictions, plaintiff could not perform the full duties of a mail carrier. Thus, she was placed on "limited duty" status.

Plaintiff alleges that, after she sustained her injury and while she was on limited duty status, the Post Office began to unfairly scrutinize plaintiff. Plaintiff, for example, claims (indeed, it is undisputed) that in March 1997 one of her supervisors, Michael Monnington, listened to one of plaintiff's private telephone conversations with a health care provider to ascertain whether plaintiff's written medical restrictions were correct. Plaintiff further claims that another supervisor, Ben Pinkerton, Postmaster for the Junction City Post Office at the time, went to the hospital where plaintiff was being treated for her injury and spoke with a nurse in an effort to determine whether plaintiff's recuperative period seemed excessive. The nurse did not provide Mr. Pinkerton with any specific information about plaintiff's condition. Plaintiff next alleges that several of her supervisors, including Mr. Monnington and Mr. Pinkerton, believed that plaintiff was exaggerating the extent of her injury and the seriousness of her symptoms and attempted to get plaintiff's coworkers to state that plaintiff was "faking" her injuries. According to plaintiff, her supervisors followed her on her postal route to ascertain whether she was malingering. Finally, plaintiff claims that Mr. Pinkerton measured the distance between the Junction City Post Office and plaintiff's medical provider in an effort to verify the mileage claimed by plaintiff on expense vouchers submitted by plaintiff for Mr. Pinkerton's approval. While the nature of her theory is not entirely clear, plaintiff apparently asserts that defendant's "unfounded suspicion of malingering" and the

increased scrutiny placed upon plaintiff were based on an alleged "penile code" in existence at the Post Office. According to plaintiff, this "penile code" meant that male employees were given preferential treatment at the Post Office and women were subjected to discriminatory treatment. These allegations, then, are a significant part of the foundation of plaintiff's sexual harassment claim.[3]

In addition to her allegations of increased scrutiny, plaintiff claims that she was forced to perform degrading and menial tasks as part of her limited duty assignments. Specifically, plaintiff asserts that she was forced to use a putty knife to scrape labels off of plastic cards used to divide the mail in the operation of the Customer Service Bar Code Sorter machine. Plaintiff also claims that she was scheduled to work a number of undesirable split-shifts. According to plaintiff, she was subjected to such "punishment" after her injury because of her gender and as a result of the "penile code" at the Post Office. These allegations of degrading and menial work, coupled with plaintiff's allegations of increased scrutiny, are the primary basis of plaintiff's sexual harassment claim.

In light of the events described above, plaintiff filed formal EEO complaints in June 1997, August 1997 and November 1997. Beginning in 1998, plaintiff applied for and was denied three promotions. In January 1998, plaintiff submitted an application for the Supervisor of Customer Services for Mail Processing position at the Salina Post Office. Although plaintiff received an interview, she was not selected for the position. The same supervisory position at the Salina Post Office that was posted in January 1998 was posted again

---

**3.** Although plaintiff in her initial complaint asserted claims of disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., she abandoned those claims in the subsequent pretrial order.

in June 1998. Plaintiff applied for the position again and again was unsuccessful. Finally, in June 1998, plaintiff applied for one of two Supervisor of Customer Services positions at the Junction City Post Office. Plaintiff did not receive an interview. According to plaintiff, defendant denied her these promotions in retaliation for plaintiff's EEO filings in 1997. Plaintiff also asserts that she was denied these promotions based on her race and/or gender.

On August 18, 1998, plaintiff was found guilty of theft from a J.C. Penney store in Manhattan, Kansas.[4] On August 20, 1998, Victor Deegan, Postmaster for the Junction City Post Office, placed plaintiff on Indefinite Suspension because he had reasonable cause to believe that plaintiff was guilty of a crime for which a sentence of imprisonment could be imposed. On October 23, 1998, plaintiff's sentencing hearing was held for her theft conviction. On that same day, defendant issued plaintiff a Notice of Removal for Conduct Unbecoming of a Postal Employee. In the meantime, on September 29, 1998, plaintiff had filed another formal EEO complaint. According to plaintiff, then, she was discharged on October 23, 1998 in retaliation for filing her September 29, 1998 complaint. She also contends that her discharge was based on her race and/or gender.

Additional facts will be provided as they pertain to plaintiff's particular claims.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart*

*Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, depo-

---

**4.** Plaintiff was arrested for shoplifting at the store on January 8, 1998.

sition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

### III. Plaintiff's Sexual Harassment Claim

■ For a sexual harassment claim to survive summary judgment, "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *O'Shea v. Yellow Technology Servs., Inc.,* 185 F.3d 1093, 1097 (10th Cir.1999) (quoting *Penry v. Federal Home Loan Bank,* 155 F.3d 1257, 1261 (10th Cir.1998) (quoting *Davis v. United States Postal Serv.,* 142 F.3d 1334, 1341 (10th Cir.1998))). Whether an environment is hostile or abusive can be determined only by looking at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 1098 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

■ Moreover, facially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim *when that conduct is viewed in the context of other, overtly gender-discriminatory conduct. Id.* at 1097 (emphasis added) (citing *Bolden v. PRC, Inc.,* 43 F.3d 545, 551 (10th Cir.1994)) (noting that, in determining whether the proponent of a hostile work environment claim has demonstrated racial animus, the court considers "the totality of the circumstances and therefore consider[s] the racial comments along with the general ridicule of [plaintiff] by the other coworkers"). In *O'Shea,* the Tenth Circuit agreed with a recent Eighth Circuit decision addressing the relevance of facially neutral conduct in the context of a race and sex discrimination action. *See id.* According to the Eighth Circuit, racial epithets are often the basis of racial harassment claims[ ] and may likewise create an inference that racial animus motivated other conduct as well.

■ All instances of harassment need not be stamped with signs of overt discrimination to be relevant under Title VII *if they are part of a course of conduct which is tied to evidence of discriminatory animus.* Harassment alleged to be because of sex need not be explicitly sexual in nature.

*Carter v. Chrysler Corp.,* 173 F.3d 693, 701 (8th Cir.1999) (emphasis added) (citations omitted).

As described above, plaintiff's sexual harassment claim is based primarily on facially neutral conduct that, according to plaintiff, is sufficient to sustain a sexual harassment claim when that conduct is viewed in the context of other, overtly gender—discriminatory conduct—the "penile code" that allegedly existed at the Junction City Post Office. According to plaintiff, this code dictated that men were given preferential treatment in all or most respects and that women were subjected to discriminatory treatment. More specifically, plaintiff claims that this penile code caused defendant's increased scrutiny of her after her injury, including defendant's listening in on a private telephone conversation, asking a nurse about plaintiff's recuperative period, suspecting plaintiff of malingering and verifying plaintiff's mile-

age voucher. She further claims that, because of the penile code, she was forced to scrape labels while on limited duty status and forced to work numerous split-shifts. Finally, plaintiff bases her sexual harassment claim in part on evidence that a supervisor frequently patted one of plaintiff's coworkers on the head.

Because plaintiff's allegations of facially neutral conduct are relevant only in the context of some overtly gender discriminatory conduct or some course of conduct which is tied to evidence of discriminatory animus, *see O'Shea*, 185 F.3d at 1097, the court first turns to analyze the evidence set forth by plaintiff regarding the alleged penile code. In support of her allegation that a "penile code" existed at the Post Office, plaintiff refers the court only to the deposition testimony of two of her coworkers, Adrian Cruz and Jeanette Hartman. Ms. Cruz testified that she voiced her aspirations to go into defendant's management training program and she "was told that ... [she] was a female and there was a penile code, which meant that you had to be a man with a—to—to advance." She further testified that she did not know who coined the phrase "penile code," but "that's what [she] was told." When asked who told her about the penile code, Ms. Cruz identified only two coworkers, including Jeanette Hartman. Ms. Hartman, in turn, testified that "the women got, in [her] opinion, the less desirable work to do." She also testified that it was "generally acknowledged" by women in the Post Office that "discrimination was going on." Finally, Ms. Hartman testified that "90 percent" of all the women she knew at the Post Office held the view that you received "preferential treatment if you had a penis."

■ These statements constitute plaintiff's only evidence of the alleged penile code. The problem with this evidence, however, is that the statements of Ms.

Cruz and Ms. Hartman are simply too vague and conclusory to support plaintiff's claim. Plaintiff points to no facts explaining how Ms. Hartman concluded that 90 percent of the women at the Post Office believed a penile code existed. There is no basis provided for Ms. Hartman's opinion that women received less desirable work than men. There is no evidence that Ms. Cruz or Ms. Hartman overheard her supervisors express reluctance to promote women or provide women with desirable jobs. There is no evidence that Ms. Cruz or Ms. Hartman witnessed any specific gender bias on the part of any supervisor at the Post Office. In short, nothing in the record indicates the basis for Ms. Cruz's and Ms. Hartman's statements regarding the alleged penile code. In other words, plaintiff has failed to support these vague allegations concerning the alleged penile code with the requisite evidentiary detail. Such allegations are insufficient to defeat defendant's motion for summary judgment and, accordingly, the court will not consider these allegations in its analysis of plaintiff's claim. *See Hooks v. Diamond Crystal Specialty Foods, Inc.,* 997 F.2d 793, 800 (10th Cir.1993) ("In order to defeat summary judgment, the nonmoving party must do more than assert conclusory allegations;" plaintiff must allege "concrete facts"); *Woodward v. City of Worland,* 977 F.2d 1392, 1398 (10th Cir.1992) (affirming summary judgment for defendant in section 1983 action where plaintiff was "unable to respond to the ... motion for summary judgment with evidence of specific acts of sexual harassment;" "generalized allegations of continuing sexual harassment" were too "vague, non-time-specific and conclusory" to support claim).

■ Plaintiff, then, has set forth no competent evidence of any "penile code." Thus, she is left only with allegations of facially neutral conduct—conduct that the

Tenth Circuit has held is relevant only in the context of other overtly gender discriminatory conduct or if it is part of a course of conduct which is tied to evidence of discriminatory animus. *See O'Shea,* 185 F.3d at 1097. Specifically, none of plaintiff's allegations of mistreatment are sexual in nature or appear to be in any way related to plaintiff's gender. As the Supreme Court has reiterated, Title VII prohibits an employer from discriminating against an employee with respect to "compensation, terms, conditions, or privileges" of employment "because of such individual's ... sex." *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (citing 42 U.S.C. § 2000e 2(a)(1)); *accord Penry v. Federal Home Loan Bank,* 155 F.3d 1257, 1261 (10th Cir.1998) (same). In determining whether workplace harassment constitutes discrimination "because of sex," the "critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *See id.* (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 25, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

■ While plaintiff asserts in her papers that male employees were not assigned "punishing and humiliating" jobs like scraping labels, she offers no support for that statement and fails to cite to any evidence in the record. In fact, defendant's evidence demonstrates that male employees on limited duty status were also required to scrape labels. Plaintiff does not controvert this evidence. Similarly, the uncontroverted evidence demonstrates that defendant required male employees to work numerous split shifts. No reasonable jury, then, could conclude that plaintiff was assigned degrading or undesirable work based on her sex. With respect to her allegation that defendant unfairly suspected plaintiff of malingering, plaintiff states that her supervisors "placed her

under a level of scrutiny which was not visited upon male employees of the Post Office." In support of this statement, plaintiff refers the court to the deposition testimony of James Butler and Adrian Cruz, two of plaintiff's coworkers. Mr. Butler, however, testified only that management did not scrutinize anyone—male or female—like they scrutinized plaintiff. Similarly, Ms. Cruz testified that defendant scrutinized plaintiff after her injury and treated her poorly. She could name only one other employee (a woman named April) who was antagonized like plaintiff. Significantly, Ms. Cruz did not testify that women were scrutinized in a way that men were not or even that plaintiff was scrutinized in a way that men were not. These excerpts, then, are insufficient to support the conclusion that defendant's increased scrutiny of plaintiff was based on plaintiff's sex. Plaintiff's evidence that Mr. Monnington listened in on one of her telephone conversations and that Mr. Pinkerton sought information about plaintiff's condition from a nurse also fails to reflect any gender-based animus whatsoever. In the absence of any shred of evidence of gender-based animus, the court simply cannot conclude that plaintiff's allegations of facially neutral conduct are sufficient to state a claim for sexual harassment within the meaning of Title VII.

Finally, the court turns to plaintiff's evidence that a supervisor frequently patted Adrian Cruz on the head. According to plaintiff, this particular supervisor did not pat male employees on the head. While plaintiff apparently seeks to use this evidence to support her sexual harassment claim, the evidence is woefully inadequate for a variety of reasons. First, this conduct was not directed at plaintiff and, in fact, there is no evidence that plaintiff even witnessed the conduct. *See Hirase-Doi v. U.S. West Communications, Inc.,* 61 F.3d 777, 782 (10th Cir.1995) (plaintiff

"may only rely on evidence relating to harassment of which she was aware during the time that she was allegedly subject to a hostile work environment"); *Cowan v. Prudential Ins. Co. of Am.*, 141 F.3d 751, 758 (7th Cir.1998) ("second-hand harassment" is "obviously not as great as the impact of harassment directed at the plaintiff"). Second, there is no evidence that the supervisor's conduct with respect to Ms. Cruz was sexual in nature. Even Ms. Cruz's own testimony does not suggest that these contacts were sexual in nature or that she perceived the conduct to be related to her gender. Finally, these incidents of physical contact are simply not sufficiently severe or pervasive to constitute sexual harassment within the meaning of Title VII. As another judge in this district has recognized, "physical contact ... is not a touchstone triggering the applicability of Title VII." *See Gillum v. Federal Home Loan Bank*, 970 F.Supp. 843, 852 (D.Kan.1997) (quoting *McCrackin v. LabOne, Inc.*, 903 F.Supp. 1430 (D.Kan. 1995) (no Title VII violation where supervisor rubbed employee's shoulders on three or four occasions)), *aff'd*, *Penry v. Federal Home Loan Bank*, 155 F.3d 1257 (10th Cir.1998). In cases where courts have found physical contact to constitute sexual harassment, the conduct has usually been much more egregious than the conduct described by plaintiff here and has been at least arguably sexual in nature. *Compare Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072 (10th Cir.1998) (harassing conduct of two customers sufficient for rational jury to find abusive work environment where one customer pulled plaintiff's hair, grabbed her breast and placed his mouth on it); *and Davis v. United States Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir.1998) (harassing conduct of plaintiff's coworker sufficient for rational jury to find hostile work environment where plaintiff was subjected to regular unwelcome hugging and kissing by coworker and on one occasion coworker approached plaintiff from behind, grabbed her by the hips, and thrust his pelvis against her) *with Penry*, 155 F.3d at 1261–63 (affirming summary judgment on plaintiff's sexual harassment claim where plaintiff complained of unwanted physical contact including supervisor touching plaintiff's shoulder on occasion, brushing against plaintiff as he passed behind her, and periodically touching plaintiff's arms or hands with his arms in a "slow and meaningful" manner).

In sum, after carefully considering plaintiff's evidence concerning the alleged conduct, the totality of the circumstances, and the applicable standard for analyzing a sexual harassment claim, the court concludes that plaintiff has not made a sufficient showing to withstand summary judgment on this claim. Accordingly, the court grants defendant's motion for summary judgment on this claim.

## IV. Plaintiff's Discriminatory Discharge Claim

 Plaintiff alleges that defendant terminated her employment on the basis of her gender and/or race in violation of Title VII. As plaintiff concedes that she has no direct evidence of discrimination, the court analyzes her claim under the burden-shifting approach established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See English v. Colorado Dep't of Corrections*, 248 F.3d 1002, 1007 (10th Cir.2001). To survive summary judgment, then, plaintiff bears the initial burden of establishing a prima facie case by a preponderance of the evidence. *See id.* at 1008. If plaintiff establishes her prima facie case, the burden shifts to defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action suffered by plaintiff. *Id.* If defendant successfully meets its burden of production, then plain-

tiff can avoid summary judgment only if she is able to put forth evidence sufficient to allow a reasonable jury to find that defendant's reason is pretextual. *Id.*

With respect to plaintiff's discriminatory discharge claim, defendant concedes for purposes of its motion that plaintiff has established a prima facie case.[5] The burden, then, shifts to defendant to produce evidence of a legitimate nondiscriminatory reason for plaintiff's discharge. According to defendant's evidence, defendant discharged plaintiff based solely on her criminal conviction of theft for "conduct unbecoming of a postal employee." Defendant has satisfied its "exceedingly light" burden to provide a nondiscriminatory reason for its actions. *See Anaeme v. Diagnostek, Inc.,* 164 F.3d 1275, 1279 (10th Cir.1999).

To establish pretext, then, plaintiff must show either that defendant's discharge decision was more likely motivated by plaintiff's gender and/or race or that defendant's proffered explanations for its decision are unworthy of credence. *See Munoz v. St. Mary–Corwin Hosp.,* 221 F.3d 1160, 1167 (10th Cir.2000) (ADEA context). Here, plaintiff attempts to make a showing of pretext by providing evidence that she was treated differently from a male, Caucasian employee who, according to plaintiff, engaged in off-duty conduct of comparable seriousness. *See English,* 248 F.3d at 1009 (a plaintiff can make a showing of pretext by providing evidence that he was treated differently from other similarly situated employees who violated work rules of comparable seriousness). Specifically, plaintiff compares defendant's treatment of her to defendant's treatment of James Butler. According to plaintiff's evidence, Mr. Butler slashed the tires of a car owned by his ex-wife's boyfriend. Subse-

quently, Mr. Butler entered a plea of nolo contendre to one count of disorderly conduct, a Class C misdemeanor. Mr. Butler was placed on probation for six months and ordered to pay restitution to his ex-wife's boyfriend in the amount of $375.00. According to plaintiff, then, both she and Mr. Butler were convicted of misdemeanors during the same time frame and both engaged in conduct "unbecoming of a postal employee." Mr. Butler, however, was not discharged. In response to plaintiff's arguments, defendant urges that plaintiff and Mr. Butler are simply not "similarly situated." As defendant argues in its papers:

Specifically, because Defendant employed Plaintiff as a Mail Carrier, she was entrusted with the sanctity of the mail. Her former position with the Postal Service involved contact with the public. The adverse publicity generated by her arrest and conviction, and the dishonest nature of her conduct were sufficient to support her termination. Indeed, mail carriers are held with high regard concerning their trustworthiness and integrity since they are entrusted to deliver mail containing valuable items. Public perceptions of an employee's theft conviction in a town like Junction City, Kansas would impair the efficiency of the agency by undermining public confidence in it. Plaintiff was employed by an agency that must maintain public confidence in its image of integrity. To allow a mail carrier to continue delivering valuable property with a theft conviction would constitute a disservice to the American public.

Unlike plaintiff's conduct, according to defendant, Mr. Butler's conduct was "totally unrelated" to the "integrity and sanctity of the mails." While defendant's argu-

---

5. To meet her prima facie burden, plaintiff need only show that she belongs to a protected class; she was qualified for her job; de-

spite her qualifications, she was discharged; and her job was not eliminated after her discharge. *See English,* 248 F.3d at 1008.

ments may ultimately persuade a jury that it discharged plaintiff for legitimate, non-discriminatory reasons, plaintiff has come forward with sufficient evidence of pretext to withstand summary judgment on this claim. Significantly, Rick Waters, plaintiff's immediate supervisor and the Acting Supervisor of Customer Services for the Carriers, wrote the following statements in his personal notes—notes that were taken contemporaneously with the Jim Butler situation:

Four o'clock PM had discussion with [Victor] Alan Deegan on the status of Jim Butler and Deb Jackson. Jim has a court hearing on February 23, 1999 for criminal damage of property. · Our concerns are how are we going to react if he is found guilty, because of the pending removable [sic] of Deb Jackson. I guess it is a wait and see matter. Does this come under ... conduct unbecoming of a Postal Employee?

These notes indicate that plaintiff's supervisors had a genuine concern over whether plaintiff and Mr. Butler were "similarly situated" such that they should receive the same treatment. Surely if plaintiff's supervisors could not· ascertain whether plaintiff and Mr. Butler were similarly situated employees, the court cannot conclude as a matter of law on this record that they are not similarly situated. The circumstances, if any, differentiating between plaintiff and Mr. Butler turn on questions of fact. The jury, rather than this court, must address the comparability of plaintiff and Mr. Butler's respective misconduct. Such factual determinations must be resolved prior to deciding whether plaintiff and Mr. Butler were similarly situated. For this reason, summary judgment is denied on plaintiff's discriminatory discharge claim.

## V. Plaintiff's Discriminatory Failure to Promote Claims

Plaintiff also asserts that she was denied three promotions on the basis of her race and/or gender. Specifically, plaintiff claims that she was denied a promotion to the Supervisor of Customer Services for Mail Processing position at the Salina Post Office in January 1998 and again in June 1998. She also claims that she was denied a promotion to one of the two Supervisor of Customer Services positions at the Junction City Post Office in June 1998. For the reasons set forth below, no reasonable jury could conclude that plaintiff was denied any of these promotions on the basis of her race and/or gender. Summary judgment is therefore appropriate in favor of defendant on these claims.

For purposes of its motion, defendant concedes that plaintiff has established a prima facie case of discrimination with respect to her failure-to-promote claims. The burden, then, shifts to defendant to articulate a legitimate, nondiscriminatory reason for each of its promotion decisions. According to defendant, plaintiff was not selected for any of the three supervisor positions for which she applied because she was not the best-qualified candidate. With respect to the position posted in January 1998, for example, defendant's evidence demonstrates that Richard Brake, Postmaster for the Salina Post Office, received a total of four applications for the position. Because of the low number of applicants, Mr. Brake decided to interview each candidate. According to Mr. Brake's testimony, plaintiff arrived late for her scheduled interview. Moreover, during plaintiff's interview and based on plaintiff's application, Mr. Brake learned that plaintiff did not have any prior mail processing experience. In fact, out of the four candidates interviewed, only one candidate, Efrain Torres, had any prior mail processing experience.

Defendant's evidence reflects that Mr. Brake selected Mr. Torres for the position based on his experience.

When the same position was posted in June 1998, ten individuals, including plaintiff, applied for the position. Consistent with defendant's Candidate Evaluation Board ("CEB") guidelines, a panel of three members rated each of the ten applicants. The panel rated plaintiff with a "Basic" rating. Mr. Brake interviewed only those candidates who received a "Superior" or "Above Average" rating. For this reason, and based on plaintiff's prior interview and lack of mail processing experience, plaintiff was not selected for an interview.

With respect to the two supervisor positions posted in June 1998, defendant's evidence shows that eleven individuals submitted applications for the positions, including plaintiff. In accordance with defendant's CEB guidelines, plaintiff's performance was rated and she received a "Basic" rating. Victor Deegan, Postmaster for the Junction City Post Office and the selecting official for the two positions, interviewed only those applicants who received a "Superior" rating.

As defendant has satisfied its burden of production, the burden shifts back to plaintiff to put forth evidence sufficient to allow a jury to find that defendant's reasons are pretextual. *See English v. Colorado Dep't of Corrections,* 248 F.3d 1002, 1008 (10th Cir.2001). In support of her argument that defendant's proffered reasons for failing to promote plaintiff are a "sham," plaintiff asserts only that she received inferior performance ratings because she "broke the aforementioned penile code" and not because of any actual deficiencies in her job performance. In other words, according to plaintiff, "had [she] not been a woman, or had she not complained about

the hostile work environment under which she and all woman were forced to work, she would have received higher job evaluation scores." [6] Plaintiff then, without further analysis, simply "incorporates all of her arguments regarding a hostile work environment into the failure to promote claim[s] due to the fact that [plaintiff] received lower evaluation scores because of her gender."

As explained above in connection with plaintiff's sexual harassment claim, however, plaintiff has failed to come forward with sufficient evidence of a "penile code" to withstand summary judgment. In fact, the court has rejected each of plaintiff's arguments in support of her hostile work environment claim. Thus, for the same reasons that plaintiff's evidence was insufficient to withstand summary judgment on her sexual harassment claim, her evidence is insufficient to show that defendant's proffered reasons for its promotion decisions are pretextual. Moreover, plaintiff does not even allege that the particular individuals responsible for evaluating plaintiff's performance for purposes of assessing her promotability followed any alleged "penile code," or otherwise harbored any bias toward women in general or plaintiff in particular. In the absence of any other argument from plaintiff concerning defendant's proffered reasons, summary judgment is appropriate in favor of defendant on plaintiff's discriminatory failure-to-promote claims.

## VI. Plaintiff's Retaliation Claims

In addition to her sexual harassment and discrimination claims, plaintiff asserts a retaliation claim against defendant based on defendant's failure to promote her in February 1998 and June 1998 and defen-

---

**6.** Plaintiff apparently concedes, then, that her race was not a factor in defendant's pro-

motion decisions.

dant's termination of her employment in October 1998. According to plaintiff, defendant failed to promote her and ultimately discharged her in retaliation for plaintiff's filing formal EEO complaints. Defendant moves for summary judgment on plaintiff's retaliation claims and, as set forth in more detail below, the motion is granted in part and denied in part with respect to these claims. Specifically, the court grants summary judgment with respect to plaintiff's retaliatory failure-to-promote claims and denies summary judgment with respect to plaintiff's retaliatory discharge claim.

■■■■ As plaintiff concedes that she has no direct evidence of retaliatory motive, the court analyzes plaintiff's retaliation claim under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See McGarry v. Board of County Commr's,* 175 F.3d 1193, 1201 (10th Cir.1999). To establish a prima facie case of retaliation, plaintiff must demonstrate that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *See O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1252 (10th Cir.2001) (citations omitted). Once plaintiff establishes her prima facie case, the burden shifts to defendant to articulate a legitimate, nonretaliatory reason for its actions. *See id.* If defendant meets its burden, then plaintiff must respond by showing that there is a genuine dispute of material fact as to whether defendant's asserted reasons for the challenged action are pretextual. *See id.*

As an initial matter, defendant maintains that plaintiff cannot satisfy the third element of her prima facie case of retaliation with respect to her retaliatory failure-to-promote claims and her retaliatory dis-

charge claim. With respect to plaintiff's retaliatory failure-to-promote claims, defendant asserts that the relevant decisionmakers had no knowledge of plaintiff's EEO complaints and, thus, plaintiff cannot establish a causal connection between those complaints and the failure to promote plaintiff. In the alternative, defendant asserts that the promotion decisions at issue were too remote in time to plaintiff's EEO complaints. Similarly, with respect to plaintiff's retaliatory discharge claim, defendant contends that plaintiff cannot establish a causal connection because plaintiff's discharge was too remote in time to plaintiff's EEO complaints.

■■■■ The court begins with plaintiff's retaliatory failure-to-promote claims. To establish a causal connection between her protected activity and defendant's promotion decisions, "plaintiff must show that the individual who took adverse action against [her] knew of [plaintiff's] protected activity." *Williams v. Rice,* 983 F.2d 177, 181 (10th Cir.1993) (citing *Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 635 (10th Cir.1988)). Significantly, plaintiff does not dispute that Mr. Deegan had no knowledge of her EEO complaints at the time the June 5, 1998 promotion decision was made. Similarly, plaintiff does not dispute that Mr. Brake had no knowledge of her EEO complaints at the time the February 10, 1998 promotion decision was made. Defendant's motion for summary judgment, then, is granted to the extent plaintiff's retaliation claim is based on these two promotion decisions. *See Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1235 (10th Cir.2000) (affirming dismissal of retaliation claim on summary judgment where plaintiff presented no evidence that decisionmaker knew of plaintiff's protected activity at time discharge decision was made); *Sanchez v. Denver Public Schools,* 164 F.3d 527, 534 (10th Cir.1998) (same); *Williams,* 983 F.2d at 181 (same). With respect to the June 26,

1998 promotion decision, however, defendant has failed to demonstrate the absence of a genuine issue of material fact regarding Mr. Brake's knowledge of plaintiff's EEO complaints.[7] Thus, defendant's motion for summary judgment is denied to the extent it is based on the issue of Mr. Brake's knowledge with respect to his June 1998 promotion decision.

 Of course, awareness of plaintiff's protected activity, without more, does not create an inference of unlawful retaliation. Plaintiff must still establish the causation element of her prima facie case. Although the Tenth Circuit has held that protected conduct closely followed by adverse action may support an inference for retaliatory motive, *see Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir.1996), the circuit has underscored that unless the employer's adverse action "is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation." *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999) (citing *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir.1997)). The circuit, for example, has held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation.

*See id.* (citing *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir.1994)). By contrast, the circuit has held that a three-month period, standing alone, is insufficient to establish causation. *See id.* (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir.1997)).

Mr. Brake's June 26, 1998 promotion decision was made nearly seven months after plaintiff's then most recent EEO complaint of November 28, 1997. Standing alone, this time period is clearly insufficient to establish the requisite causation. *See Kendrick*, 220 F.3d at 1234 (plaintiff failed to establish causal connection between his complaints to management and his discharge because the complaints, occurring six months prior to his discharge, were remote in time). While plaintiff concedes as much, she contends that she has come forward with a "mountain of evidence" establishing causation sufficient to survive summary judgment on this claim. Specifically, plaintiff directs the court to the deposition testimony of two of her coworkers, Ms. Cruz and Ms. Hartman. Both coworkers testified to the effect that defendant began to "scrutinize" plaintiff after she was injured and that other employees were not subject to such scrutiny. According to plaintiff's characterization of these witnesses' testimony,[8] Ms. Cruz and

---

**7.** While Mr. Brake avers that he had no knowledge of plaintiff's EEO complaints prior to the February 1998 promotion decision, his affidavit is silent on the issue of whether he knew about her complaints prior to the June 26, 1998 promotion decision. In essence, then, defendant directs the court to no evidence supporting its contention that Mr. Brake had no knowledge of plaintiff's complaint prior to his June 1998 promotion decision.

**8.** Plaintiff asserts in her papers that both Ms. Cruz and Ms. Hartman testified that defendant scrutinized plaintiff in retaliation for her asserting her protected rights. The pages of Ms. Cruz's deposition referenced by plaintiff,

however, are not included in the record before the court. Moreover, the pages of Ms. Hartman's deposition referenced by plaintiff simply do not support the broad statement made by plaintiff. Ms. Hartman testified only that she and other women in the workplace decided not to complain about alleged gender discrimination in the workplace because "it seemed that if you filed a grievance or you wanted to do an EEO, we felt that they were going to retaliate either in scheduling, with your hours, or you would get split shifts in your scheduling, work the bad hours, do the bad jobs." Her testimony has nothing to do with plaintiff's filing of any EEO complaints or Mr. Brake's promotion decision in June 1998.

Ms. Hartman also testified that such scrutiny was inflicted upon plaintiff "in retaliation for her asserting her protected rights." This evidence is woefully inadequate to establish causation with respect to plaintiff's retaliatory failure-to-promote claim. First, Ms. Cruz's and Ms. Hartman's testimony that plaintiff was scrutinized after her injury has no apparent connection whatsoever to the particular promotion decision made by Mr. Brake or to plaintiff's EEO filings. Second, even assuming Ms. Cruz and Ms. Hartman testified that such scrutiny was inflicted upon plaintiff in retaliation for her asserting her protected rights (testimony which is purely conclusory in nature and unsupported by any specific allegations of alleged retaliation), such testimony would be of no avail to plaintiff because, of course, the subjective beliefs of plaintiff's coworkers that defendant was retaliating against plaintiff are insufficient to create a genuine issue of material fact concerning defendant's allegedly retaliatory motives. *See Kendrick,* 220 F.3d at 1231 n. 11 (citation omitted). In the absence of any other evidence regarding causation, plaintiff is left only with the seven-month gap between her protected conduct and Mr. Brake's promotion decision. Summary judgment, then, is appropriate on plaintiff's retaliatory failure-to-promote claim concerning the June 26, 1998 promotion decision.

■ The court turns, then, to plaintiff's retaliatory discharge claim. As explained above, defendant asserts that plaintiff has failed to establish a prima facie case of retaliation because her discharge was too remote in time to her EEO filings. The court disagrees. Defendant terminated plaintiff's employment on October 23, 1998. Her last formal EEO complaint prior to that time was made on September 29, 1998. Thus, the period of time between plaintiff's EEO complaint and her discharge is just over three weeks. In such circumstances, the court concludes that the temporal proximity between the two events is close enough that a reasonable jury could infer that a causal connection existed. *See Duvall v. Midwest Office Tech., Inc.,* No. 98–2546–JWL, 1999 WL 1423766, at \*8 (D.Kan. Dec.20, 1999) (collecting cases). In short, for purposes of summary judgment, the close temporal relationship between plaintiff's September 1998 EEO complaint and the decision to terminate her employment demonstrate that plaintiff has met her burden of establishing a prima facie case of retaliation with respect to her discharge.

■ The burden then shifts to defendant to produce evidence of a legitimate nonretaliatory reason for terminating plaintiff's employment. As set forth above in connection with plaintiff's discriminatory discharge claim, defendant asserts that plaintiff's employment was terminated based solely on her theft conviction. As further explained above in connection with that claim, however, a genuine issue of material fact exists as to whether defendant's proffered reason for plaintiff's discharge is a mere pretext. Specifically, plaintiff has come forward with evidence suggesting that Jim Butler also engaged in conduct unbecoming of a postal employee similar to plaintiff's conduct. Unlike plaintiff, Mr. Butler was not discharged. Moreover, plaintiff's evidence demonstrates that her supervisors struggled with the question of whether Mr. Butler's situation was akin to plaintiff's situation. In sum, then, for the same reasons the court denied summary judgment on plaintiff's discriminatory discharge claim, the court denies summary judgment on plaintiff's retaliatory discharge claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. # 79) is **granted in part and denied in part.** The motion is granted with respect to plaintiff's

sexual harassment, discriminatory failure-to-promote and retaliatory failure-to-promote claims. The motion is denied with respect to plaintiff's discriminatory discharge and retaliatory discharge claims. Plaintiff's motion for leave to file a surreply (doc. # 92) with respect to defendant's motion is **denied.**

**IT IS SO ORDERED.**