NOT FOR PUBLICATION
File Name:  06a0087n.06
Filed:  February 1, 2006

NO. 05-5760

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

TINA L. HOLLEY, formerly known
as Tina H. Griggs; JOY D.
HAYWARD; KAREN H. GOWAN;
MICHAEL R. CHAPMAN,

     Plaintiffs-Appellants,

v.                                                                     ON APPEAL FROM THE
                                                                       UNITED STATES DISTRICT
GILES COUNTY, TENNESSEE;                                               COURT FOR THE MIDDLE
GILES COUNTY SHERIFF'S                                                 DISTRICT OF TENNESSEE
DEPARTMENT; EDDIE BASS,
individually and in his capacity as
Sheriff of Giles County, Tennessee;
TOMMY PORTERFIELD,
individually and in his capacity as
Chief Deputy Sheriff of Giles
County, Tennessee,

     Defendants-Appellees.
_____/

BEFORE:  SUHRHEINRICH, and GRIFFIN, Circuit Judges; and HOOD, Chief District
Judge.[*]

     **SUHRHEINRICH, J.,** Plaintiffs-Appellants Tina Holley, Joy Hayward, Karen Gowan, and

Michael Chapman (collectively, "the Employees") brought suit against Defendants-Appellees Giles

County, Tennessee; Giles County Sheriff's Department; Eddie Bass, individually and in his official

capacity as Sheriff of Giles County, Tennessee; and Tommy Porterfield, individually and in his

_____

     [*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

official capacity as Chief Deputy Sheriff of Giles County, Tennessee (collectively, "Giles County"). The Employees' claims included retaliation for exercising their First Amendment rights, retaliation for filing an Americans with Disabilities Act ("ADA") claim with the Equal Employment Opportunity Commission ("EEOC"), and fraudulent misrepresentation. They appeal the district court's grant of summary judgment for Giles County on all claims. For the reasons that follow, we **AFFIRM**.

## I. Facts and Procedural History

The following facts are undisputed. In March 1997, the Giles County Sheriff's Department ("the department") moved into the newly constructed Giles County Law Enforcement Center ("the jail"). The jail is divided into two areas: an administrative area and a secure area where inmates are held. The Tennessee Highway Patrol also relocated one of its branches to the jail. Less than a year later, Defendant Eddie Bass ("Sheriff Bass") and others began to notice a moisture problem caused by construction defects.

Unbeknownst to the department staff, in February 2001, Giles County filed suit in state court against various construction companies and design firms for breach of contract and breach of implied warranty of merchantability. On January 17, 2003, Sheriff Bass instructed his personal secretary, Plaintiff Karen Gowan ("Gowan"), to type a letter to Sergeant Bart Butler of the Tennessee Highway Patrol, in which Sheriff Bass addressed Sergeant Butler's concerns about the moisture problem. After typing the letter, Gowan contacted an attorney, Mr. Wilmer, and notified her co-workers that there was a known moisture problem in the jail.

On February 7, 2003, Gowan and approximately fifteen to twenty other department employees met with Mr. Wilmer at a restaurant some thirty miles from the jail. Mr. Wilmer

suggested that the jail employees present their health concerns vis-a-vis the moisture problem to Sheriff Bass in writing. Mr. Wilmer then drafted a letter ("the petition") addressed to Sheriff Bass and Defendant Chief Deputy Sheriff Tommy Porterfield ("Chief Deputy Porterfield"). Gowan later typed and circulated the petition to jail employees. Fifty employees signed the petition. This number represents virtually the entire personnel of the department. On February 11, five or six employees–with Gowan and Plaintiff Tina Holley ("Holley") being the only two who are also plaintiffs in this case–physically delivered the petition to Sheriff Bass.

As presented to Sheriff Bass, the petition read as follows:

> Dear Sheriff Bass & Chief Deputy Porterfield:
>
> We, the following employees of the Giles County Sheriff's Department respectfully request that the county immediately take steps to provide the employees of the Department a safe and healthy working environment. We believe that since our building was occupied in 1997, there has been a heavy moisture problem that has caused extensive health problems among departmental employees, inmates and others.
>
> We believe that is highly improper to require us to continue working in this facility, which you and the county know to be hazardous to our health. Further, it is improper to require us to remain in the building while the county slowly tries to address this problem through the court system.
>
> Thank you for your kind attention.
>
> Sincerely,
>
> cc:     County Executive
>         County Commissioners

When confronted with the petition, Sheriff Bass "turned his back and didn't say anything."

On April 3, 2003, Gowan, Holley, and Plaintiff Michael Chapman ("Chapman") filed ADA claims with the EEOC. These claims alleged that the moisture problem had worsened the claimants' pre-existing medical conditions and that fixing the problem was a reasonable accommodation of

-3-

their alleged disabilities.

On April 24, 2003, the Employees, along with nineteen of their co-workers, filed a lawsuit in federal court against Giles County and various construction companies, alleging violations of their civil and constitutional rights, negligence, breach of warranty, and nuisance, among others. Also that day, these same plaintiffs brought suit in state court against Giles County, Tennessee and the Giles County Sheriff's Department for tort liability. Essentially, these lawsuits (collectively, "the personal injury suits") alleged that the moisture problem that had created unsafe and unhealthy working conditions.

The Employees filed the present lawsuit about a year later. The lawsuit alleges, inter alia, that Giles County took certain adverse actions against the Employees in retaliation for exercising their First Amendment rights through the petition and personal injury suits, in violation of 42 U.S.C. § 1983. Also, Holley alleges that Giles County retaliated against her for filing an ADA claim, and Hayward alleges fraudulent misrepresentation under Tennessee state law.

The district court granted Giles County's motion for summary judgment on all claims and dismissed the Employees' case with prejudice. The Employees timely appealed to this Court.

## II. Issues and Standard of Review

The Employees raise three issues on appeal: (1) whether the district court erred in granting summary judgment for Giles County on the Employees' claims of First Amendment retaliation; (2) whether the district court erred in granting summary judgment for Giles County on Holley's claim of ADA retaliation; and (3) whether the district court erred in granting summary judgment for Giles County on Hayward's claim of fraudulent misrepresentation.

This Court reviews a grant of summary judgment de novo. *Lukowski v. CSX Transp., Inc.*,

416 F.3d 478, 482 (6th Cir. 2005). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if a reasonable person could return a verdict for the non-moving party." *Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004). This Court must view all facts and inferences drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. First Amendment Retaliation

The framework for analyzing a First Amendment retaliation case is well-established. First, the court must determine whether the speech involved a matter of public concern. *See Connick v. Myers*, 461 U.S. 138, 143 (1983); *Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003). If so, then the court must engage in so-called *Pickering* balancing analysis, in which the court balances "the interests of the public employee, 'as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Rodgers*, 344 F.3d 587 at 596 (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). Finally, the court must determine whether the employee's speech was a "substantial" or "motivating factor" in the employer's decision to take the adverse employment action against the employee. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Perry v. McGinnis*, 209 F.3d 597, 604 (6th Cir. 2000).

We need not reach the issue of whether the Employees' conduct was a matter of public concern or the issue of whether the Employees have satisfied the *Pickering* balancing test. Because

we find that the speech was not a motivating factor for any of the alleged adverse actions, the Employees' First Amendment retaliation claims must fail.

In the context of First Amendment retaliation, an adverse action is one likely to "'chill a person of ordinary firmness from continuing to engage in [protected] activity.'" *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000) (quoting *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)). "[T]he nonmoving party may not rely on the mere fact that an adverse employment action followed speech that the employer would have liked to prevent. Rather, the employee must link the speech in question to the defendant's decision to [take action against] her." *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997) (citation omitted).

The district court concluded that each plaintiff failed to create a genuine issue of material fact that the speech was a motivating factor for the alleged adverse actions. As there are four plaintiffs alleging distinct adverse actions, each plaintiff will be discussed in turn.

### 1. Holley

On May 19, 2003, Holley was terminated for "authoriz[ing] the nurse's pay sheet . . . [and for] authoriz[ing] more time than [the nurse] worked." Holley admits that she was not authorized to do either.

Termination is unquestionably an adverse action. *See Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1055 (6th Cir. 2001). Thus, the key issue with Holley is whether her termination was motivated at least in part by her speech. *See id.* As the district court noted, Holley's case is close because of "the fairly short passage of time between presentation of the petition in February, to Holley's participation in the . . . lawsuits and ADA charges in April, to her termination in May."

Holley relies entirely on the temporal proximity between her speech and her termination, and

-6-

on her personal belief that her termination was in retaliation for the personal injury suits.[1] However, even a strong temporal connection, without more, is insufficient to withstand summary judgment. *See Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 602 (6th Cir. 2002); *Bailey*, 106 F.3d at 145.

Moreover, the circumstances surrounding Holley's termination belie her claim that her speech was a motivating factor for her termination. When Holley realized that she could not verify when the nurse was at the jail, she called Cathy Hood, another department secretary, to discuss the dates. Sheriff Bass knew this but did not terminate Hood, even though Hood, like Holley, signed and delivered the petition, because Hood did not authorize the pay sheet. Holley, however, was terminated, because she personally authorized the nurse's pay sheet. Further, the nurse was also forced to resign and even apologized to Holley for causing Holley to lose her job. Therefore, we agree with the district court that Holley has failed to create a genuine issue of material fact as to whether her speech was a motivating factor for her termination.

### 2. Hayward

On March 12, 2004, Hayward resigned her position with the department. She argues that this was a constructive termination such that it should be considered an adverse action. Even assuming that Hayward is right, however, she has not produced evidence sufficient to survive summary judgment on the issue of motivation.

First, Hayward's resignation occurred eleven months after the personal injury suits were

---

[1]Holley also cites her testimony that Sheriff Bass nodded his head "yes" in response to her statement to him at the time of her termination that "you and I both know what this is about." However, nowhere in the record does Holley state what inference the factfinder is to draw from this exchange. Moreover, proof of an employer's discontent–or even "'wrath'"–with his employee's constitutionally protected speech is insufficient to prove retaliation. *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 700 (7th Cir. 2002) (quoting *Love v. City of Chicago Bd. of Educ.*, 241 F.3d 564, 569 (7th Cir. 2001)).

filed. Such a long time lag between the speech and the adverse employment action is a strong indication that the action was not retaliatory. *See, e.g.*, *Timm v. Wright State Univ.*, 375 F.3d 418, 423 (6th Cir. 2004) (finding no First Amendment retaliation where the employer terminated the employee eight months after her protected conduct).

Second, the circumstances surrounding Hayward's resignation were extraordinary. In November 2003, an ex-inmate of the jail was killed in an automobile accident. At the time of the accident, he was driving Hayward's car while intoxicated. An investigation revealed that Hayward had been romantically involved with the ex-inmate.

Weeks later, the department investigated allegations that Hayward granted male prisoners unauthorized access to female prisoners. In January 2004, there was yet another investigation into allegations that Hayward was smuggling contraband into the jail. During the course of this investigation, Hayward admitted violating the department's non-fraternization policy by passing notes between prisoners and giving prisoners food. The lead investigator recommended her termination. Sheriff Bass, however, decided to give her another chance. Thus, although Sheriff Bass had sufficient justification for terminating Hayward after her speech, he gave her a pass instead.

Approximately one month later, a former jail inmate, who was Hayward's then-boyfriend,[2] was arrested for driving under the influence of alcohol ("DUI") and driving without a license. An investigation revealed that the former inmate was driving Hayward's car with her permission when he was arrested. Also, Investigator Dickey found in Hayward's car a receipt for a money order Hayward had sent to a prisoner in a Tennessee state penitentiary.

---

[2]Hayward admits the two were "in a relationship," although it was not "exclusive."

Investigator Dickey contacted a local prosecutor about Hayward's potential criminal liability for DUI by allowance. The prosecutor advised Investigator Dickey that the case as described was "weak" and that to be successful the prosecutor "would need evidence that the corrections officer gave the individual the keys to her car knowing he was intoxicated." The prosecutor also indicated that, in any event, the proper venue for any criminal action would be in neighboring Lawrence County.

Investigator Dickey then interviewed Hayward and, according to Hayward's testimony, advised her that Sheriff Bass and Chief Deputy Porterfield would likely "forget about" the incident and not pursue criminal charges if she resigned. She tendered her resignation shortly thereafter.

Taken together, the long time lag, the facts immediately surrounding Hayward's resignation, and the lack of direct evidence of a retaliatory motive make clear that there is no genuine issue of fact that the reasons for the alleged constructive termination were not related to Hayward's speech.

### 3. Gowan

The alleged adverse actions against Gowan are two written reprimands she received in January 2004 and various changes in her employment conditions,[3] which Gowan claims demonstrate disparate treatment in retaliation for her speech. These changes include a requirement that she take an escort with her when fulfilling certain duties outside of the jail. The reprimands were the first she had received during her tenure with the department.

Even assuming that these actions are sufficient to "chill a person of ordinary firmness from continuing to engage in the activity," *Leary*, 228 F.3d at 737 (quotation omitted), she fails to create

---

[3]Gowan resigned only after filing the lawsuit at bar. Thus, any alleged constructive termination cannot be considered an adverse employment action in this case.

a genuine issue as to whether her speech motivated Giles County's actions. Holley did not receive the reprimands until January 2004–nearly nine months after the personal injury suits were filed. Once again, such a substantial time lag, without more, is insufficient to survive summary judgment. *See Farmer*, 295 F.3d at 602; *Bailey*, 106 F.3d at 145.

Moreover, the record makes no connection between her speech and the adverse actions. The new "escort" requirement was announced to all departmental secretaries in a memorandum that included changes in working conditions applicable to all. While Gowan received a written reprimand regarding the use of department telephones for personal calls, the reprimand states that "Sheriff Bass allows personal phone calls with a two-minute time restriction as noted in a memo by Sheriff Bass." In other words, the reprimand was intended to enforce an existing departmental policy of general application. Thus, Gowan has provided no evidence (other than her own conclusory statements) to support her allegation of disparate treatment. Nor has she presented any other evidence of a direct link between the adverse actions and her speech. Therefore, Gowan has failed to generate a genuine issue of material fact that Giles County acted in retaliation for her speech.

### 4. Chapman

The only alleged adverse employment actions against Chapman are certain oral and written reprimands he received around the time of the petition and personal injury suits. However, by Chapman's own admission, the only "discipline" he ever received occurred years before the speech at issue. In other words, Chapman himself does not consider the reprimands to be discipline. Thus, it does not appear that these acts can even rightly be considered adverse actions.

Even assuming that these are adverse employment actions, however, Chapman has not made

-10-

a connection between these actions and his speech. Again, temporal proximity alone is insufficient to survive summary judgment, *see Farmer*, 295 F.3d at 602; *Bailey*, 106 F.3d at 145, and nothing in the record strengthens his case. During his deposition, Chapman was asked how he knew that the reprimands occurred on account of his speech. He responded, "With the benefit of having known [Sheriff] Bass for 18 years, it's my opinion. I think it's stronger than speculation." Chapman also claims that he and Investigator Dickey (the only two investigators in the department) received disparate treatment as evidenced by the written reprimands. However, to the extent that any rules were unique to Chapman, all but one was made known to Chapman at least three years prior to the events at issue. Moreover, Chapman received no fewer than eight written reprimands prior to his speech, and most of those addressed conduct similar to that addressed in the reprimands following his speech.

Armed with little more than self-serving conclusory allegations and a strong temporal proximity, Chapman has failed to create a genuine issue of material fact as to the motivating factors for any alleged adverse employment action.

### 5. Other Employees

There are no allegations that any of the other fifty employees who signed the petition or any of the other nineteen employees who joined the personal injury suits was retaliated against. This includes the employee who spoke for the group in presenting the petition to Sheriff Bass. Also, as the district court noted, Lieutenant Chapman, who signed the petition but in a later letter distanced himself from certain portions of it, was promoted to the department's third-in-command and given a raise, all after Sheriff Bass received the petition.

In light of this record, we conclude that the district court did not err in granting Giles County

summary judgment on the Employees' First Amendment retaliation claims.

## IV.  ADA Retaliation

Holley claims that the district court erred in granting Giles County summary judgment on her ADA retaliation claim.  The prima facie case for ADA retaliation requires proof that (1) the employee engaged in protected activity, (2) the employer took an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997).  If established, the burden shifts to the employer to show a legitimate, non-discriminatory reason for the action.  *Id.*  The employee then bears the burden of proving that the proffered reason was pretext for discrimination.  *Id.*

On several occasions during her deposition testimony, Holley was asked if she believed she was terminated on account of her ADA complaint.  Not once did she respond in the affirmative; instead, she repeatedly said that she was terminated "because of the lawsuits."  In any event, for the reasons stated above, Holley cannot survive summary judgment.  Giles County has presented a legitimate, non-discriminatory reason for her termination (i.e., authorizing the nurse's timesheet and authorizing more time than the nurse worked), and Holley has not presented any evidence that this was mere pretext.  Therefore, we affirm the district court's grant of summary judgment for Giles County on this claim.

## V.  Fraudulent Misrepresentation

Finally, Hayward claims that the district court erred in granting Giles County summary judgment on her fraudulent misrepresentation claim.  She argues that Giles County, through Investigator Dickey, misrepresented its ability to pursue a criminal action against her for DUI by allowance.

In Tennessee, a prima facie case of fraudulent misrepresentation requires proof that, inter alia, the alleged misrepresentation goes to an existing or past fact or embodies a promise of future action without the present intent to carry out the promise. *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *First Nat'l Bank of Louisville v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn. 1991) (quotation omitted). As the district court found, Hayward's own testimony proves that Investigator Dickey neither made a promise as to whether Hayward would be prosecuted if she did not resign nor misrepresented Giles County's ability to seek criminal charges. Specifically, Hayward testified that Investigator Dickey told her that she "*could be charged* with" (emphasis added) DUI by allowance based on her then-boyfriend's DUI. Hayward has made no attempt to refute the plain meaning of her testimony. It is clear, then, that there is no genuine issue of material fact on the issue of misrepresentation, as there is no evidence of an affirmative misrepresentation. Therefore, we agree with the district court that Giles County is entitled to judgment as a matter of law on this claim.

## VI. Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.