NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0424n.06

No. 10-5107

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 28, 2011*

LEONARD GREEN, Clerk

THOMAS C. BROWN,

    Plaintiff-Appellant,

v.

CITY OF FRANKLIN,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

BEFORE: ROGERS and KETHLEDGE, Circuit Judges; and RUSSELL, Chief District Judge.[*]

ROGERS, Circuit Judge. Plaintiff Thomas C. Brown, a firefighter for the Defendant City of Franklin, Tennessee, alleges that the city retaliated against him for providing testimony favorable to African-American firefighters who were suing the city for racial discrimination, and for otherwise supporting and/or assisting the firefighters with their claims. Brown claims violations of Title VII, 42 U.S.C. § 2000e *et seq.*, and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.*[1] The district court granted the city's motion for summary judgment. Brown has offered no evidence that Fire Chief Rocky Garzarek knew of Brown's protected activities, and has not claimed that other city officials bore a retaliatory animus against him. Brown also did not put forth sufficient evidence showing that the city's non-retaliatory reasons for its actions were pretextual.

---

[*]The Honorable Thomas B. Russell, United States Chief District Judge for the Western District of Kentucky, sitting by designation.

[1]Brown also claimed violations of the First Amendment, 42 U.S.C. §§ 1981 and 1983, and Tennessee common law, but he has not appealed the dismissal of these claims.

Consequently, the district court properly granted summary judgment with respect to the claims raised on this appeal.

Brown has been employed by the fire department for fourteen years. He was promoted to captain on March 16, 2006. Until the events of this lawsuit, Brown had no formal punishments in his employment record. Brown claims that it is common knowledge in the fire department that he supports African-American firefighters' discrimination complaints. In his deposition, Brown clarified that he is known to take a neutral stance on discrimination complaints, believing that complaint-review procedures should be allowed to run their course without positions being taken.

In the fall of 2006, Brown was approached by an African-American firefighter, Gairy Ferguson, about racial discrimination Ferguson allegedly experienced. Brown says that he told Ferguson to report his concerns to the human resources department and to the EEOC. Brown reported the conversation to his supervisor, Assistant Chief Gentry Fox. Brown claims Fox told him not to document the conversation with Ferguson and not to report Ferguson's concerns any further up the chain of command. Brown and Fox decided to make a personal investigation of Ferguson's complaint, and eventually decided that the complained-of actions were not race-based.

In October 2006, Brown was interviewed by the city's attorneys and was questioned about his knowledge of pending racial-discrimination lawsuits against the city by African-American firefighters. During this meeting, Brown allegedly discussed instances of racial discrimination, as well as policy changes that had an adverse impact on African-American firefighters. The city denies that Brown ever made such statements, but treated Brown's version of the events as true for purposes of summary judgment. Ferguson later raised his race-based harassment claims with the fire

2

department, triggering an investigation by human resources. Pursuant to this investigation, on December 20, 2006, human resources interviewed Brown. Brown says that he told the attendees of this meeting that he supports anyone who utilizes available procedures to address discrimination complaints. The city again denies that Brown said this, but again treated his version of the events as true for purposes of summary judgment.

Human resources later issued a report concluding that Brown and Fox acted inappropriately by personally investigating Ferguson's complaint instead of reporting it to human resources or to Chief Garzarek. Garzarek was given a copy of this report. Garzarek denied ever learning of Brown's statements from the two interviews, and at oral argument, Brown conceded that he had no evidence to contradict Garzarek on this point.

On January 31, 2007, Garzarek disciplined Brown for poor performance as a captain and had Brown's probationary period extended by one year. This excluded Brown from testing for certification for promotion. Brown had been on probation due to his recent promotion to captain. While Garzarek recalled few specific examples of Brown's poor behavior, Garzarek and Fox said that they perceived a pattern of poor judgment, management decisions, and interpersonal skills on Brown's part that, while not outright policy violations, reflected a lack of the judgment and discretion needed for the position of captain. Garzarek claims that the precipitating event involved firefighters Ben Gasser and Doug Bowman. In this event, Brown apparently berated a human resources employee, over a speaker phone and in front of an audience, about the reasons given for denying Gasser and Bowman promotions. Garzarek and Fox also claimed that Brown alienated people and had a difficult time accepting answers with which he disagreed.

3

While Fox testified that Brown technically performed "by the book" and was a competent shift commander, Fox also explained that Brown exercised poor judgment and decision-making on a number of occasions. Fox said that he did not know why Garzarek extended Brown's probation and that Fox could not recall seeing anything warranting the decision. Fox had no personal knowledge of the Gasser/Bowman incident, however. Garzarek said that he usually relied on the assistant chiefs, such as Fox, for assessing Brown and other captains. Garzarek could not recall whether he relied on information from Fox about Brown's performance problems.

On March 26, 2007, Garzarek disciplined Brown for reporting Ferguson's discrimination concerns to Fox instead of to the department head (Garzarek) or to human resources. The disciplinary action consisted of suspending Brown for one day without pay and ordering additional harassment training. Garzarek also gave Fox a counseling letter for not reporting the discrimination concerns to Garzarek or to human resources. According to Fox, discrimination reports were supposed to be reported up the chain of command, i.e., first to Fox, and then to the Fire Chief. However, the city's Personnel Policy states that "[w]hen an allegation of harassment is made by an employee, the person to whom the complaint is made shall immediately prepare a report of the complaint according to the preceding section and submit it to the Department Head." The policy also states that it is human resources' responsibility to investigate such complaints. Brown appealed his disciplinary actions through the city's internal procedures, but to no avail.

Also in March, Fox transferred Brown from fire station number two to station number five, without request or input from Garzarek or others. Brown says this deprived him of crucial on-the-job experience and denied him the opportunity to be the acting shift commander. Fox told Brown

that he transferred him "to protect him," which Brown interprets as "protection" from further retaliation. Fox explained that he meant to "protect" Brown from the consequences of his professional deficiencies, deficiencies that would be much more visible in the high-volume environment of station two than in the more relaxed environment of station five.

In April 2007, Brown was deposed for a lawsuit brought by African-American firefighters against the city. Brown testified about unfair treatment, including treatment that he had personally experienced, due to office politics and personality conflicts, and that the previous fire chief awarded promotions under "the good ole boy system." Brown testified that he had never witnessed racial discrimination or harassment at the fire department.

Brown filed suit against the city on April 10, 2008, claiming violations of Title VII and the Tennessee Human Rights Act, as well as other claims that he does not pursue on appeal. Brown claims that the city, acting through Garzarek, retaliated against him because of his alleged support of the African-American firefighters' discrimination claims. Brown does not allege that Fox or the human resources employees were motivated to retaliate against him. At oral argument, Brown claimed the following as his statutorily protected conduct: (1) his statements in the 2006 meetings; (2) his 2007 deposition testimony; and (3) his "plaintiff-supportive" reputation. He claimed the following as the city's adverse actions: (1) his January 2007 discipline; (2) his March 2007 discipline; (3) his station transfer; (4) his removal from acting shift-commander responsibility; and (5) his denial of testing for promotional certification.[2] The district court granted the city's motion

_____

[2]Brown did not mention the other supposed retaliatory acts to which the city referred in its brief. These acts against Brown include: (1) his denial of training opportunities; (2) Garzarek's calling him by his first name instead of his rank; (3) Garzarek and Culberson's failing to

for summary judgment. The court first dismissed Brown's federal claims on the merits, and then dismissed his state-law claims without prejudice. Brown appeals.

I.     **Title VII claims.**

The district court properly granted summary judgment to the city and dismissed Brown's Title VII retaliation claims. Brown's claims could not survive summary judgment because there were no genuine issues of material fact regarding necessary elements of his prima facie case. In any event, Brown has also not put forth sufficient evidence to demonstrate that the city's reasons for its actions were pretextual, and his Title VII claims fail for this reason as well.

If the adverse actions are grouped according to the city officials who committed them (i.e., those committed by Garzarek and those committed by others), it becomes clear that each group of actions fails to satisfy a particular element of Brown's prima facie case. For the adverse actions committed by Garzarek—the January and March discipline—Brown offered no evidence to show that Garzarek ever knew of Brown's allegedly protected activities. This is fatal to Brown's claims regarding the disciplinary actions, because one necessary element of the prima facie case is that the official committing the adverse action have knowledge of the protected activities. *Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 343 (6th Cir. 1998). Garzarek says that he never learned of the statements Brown presumably made during the two interviews; that he had only been informed by human resources that Brown had received a discrimination complaint and had failed to report it according to department policy. Brown contests this simply by contending that human resources

acknowledge him in front of his crew; (4) his discipline appeal's being postponed and difficult to schedule; and (5) his discipline appeal's being supposedly unfair and/or biased.

"must have told" Garzarek of Brown's statements. This, however, is pure speculation, and Brown

conceded that he has no evidence to undermine Garzarek's claim of ignorance. Brown gave his

deposition testimony *after* Garzarek disciplined Brown, making it impossible for Garzarek to know

of this activity at the time of the discipline. And Brown's supposed reputation for supporting

discrimination plaintiffs was also unknown to Garzarek, hardly surprising given that Brown himself

described his "plaintiff-supportive reputation" as not one of support but of taking a neutral,

dispassionate stance. Such a reputation probably does not even constitute protected activity at all,

as "Title VII protects employees from retaliation for having opposed an employer's unlawful

actions," and "[a]n employee had engaged in opposing activity when she complains about unlawful

practices to a manager, the union, or other employees." *Barrett v. Whirlpool Corp.*, 556 F.3d 502,

516 (6th Cir. 2009). Brown cannot show a disputed issue of material fact on this prima facie case

element without putting forth evidence suggesting that Garzarek knew of Brown's protected

activities when he chose to discipline Brown. Brown has not done this, and his retaliation claims

fail with respect to the disciplinary adverse actions.

As for the remaining adverse actions, all of which were committed by Fox or the human

resources employees, Brown cannot demonstrate a causal connection between those actions and his

protected activities. This causal connection is another requisite element of Brown's prima facie case,

*Barnett*, 153 F.3d at 343, and his failure to satisfy this element necessarily dooms his retaliation

claims with respect to the adverse actions committed by Fox and human resources. The lack of a

causal connection here is obvious: Brown has not claimed that Fox or the human resources

employees bore any retaliatory animus against him. Brown impugns only Garzarek's motive, and

it is undisputed that Garzarek had no input in Fox's and human resources' actions. If Fox and human resources did not actually retaliate against Brown, then clearly their actions could not have been caused by Brown's protected activities. Thus, Brown cannot show a disputed issue of material fact on this prima facie case element, and his retaliation claims fail with respect to the remaining adverse actions.

Even assuming that Brown has put forth a prima facie case, his retaliation claims would still fail because he has not shown genuine issues of material fact on whether the city's proffered reasons for its actions were pretextual. Because the city offered facially non-retaliatory reasons for its adverse actions, Brown has the burden "to prove by a preponderance of the evidence that the employer's proffered reason was in fact a pretext designed to mask illegal discrimination." *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 489 (6th Cir. 2000). The district court correctly concluded that Brown has not put forth sufficient evidence with which to prove such pretext. *Brown v. City of Franklin*, No. 3:08-0371, 2010 WL 98709, at *14-15 (M.D. Tenn. Jan. 6, 2010). Brown's pretext argument rests primarily on the relative closeness in time between his protected activities and the adverse actions. However, as we held in " *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001), a case involving six weeks of time between protected activity and adverse actions, "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual. And in *Holley v. Giles Cnty.*, 165 F. App'x 447, 451-52 (6th Cir. 2005) we explained that "even a strong temporal connection, without more, is insufficient to withstand summary judgment."

Again grouping the adverse actions by the officials who committed them, Brown's lack of sufficient pretext evidence becomes even more apparent. Brown claims that both Garzarek's and Fox's testimony allowed an inference of pretext in Garzarek's stated reasons for disciplining Brown, which were Brown's poor job performance and misreporting of the racial-harassment complaint. Their testimony does not bear this out. While Garzarek could not exhaustively detail Brown's management and judgment issues, Garzarek nonetheless said that he perceived a pattern of poor judgment, management decisions, and interpersonal skills on Brown's part; noted interpersonal difficulties that Brown had; and cited the Gasser/Bowman speaker-phone incident as the precipitating factor in Brown's discipline. Fox gave several examples of Brown's poor judgment and decision-making ability, and testified that Brown alienated people and had difficulty accepting contrary answers. Although Fox saw nothing warranting an extension of Brown's probation, he did not claim to have detailed knowledge of the speaker-phone incident that Garzarek found so troublesome. And while Fox supported Brown's view of the complaint-reporting process, the city's written policy unequivocally states that Ferguson's complaint should have been submitted to the department head (Garzarek), expressly contradicting Fox's view of the process. Fox's testimony shows that he either misunderstood the claim-reporting policy (Fox had never dealt with a discrimination complaint before the events of this case) or that he willfully disregarded it. Either way, his and Garzarek's testimony do not create genuine issues of material fact on whether the reasons given for the discipline adverse actions were pretextual.

Brown has also failed to present sufficient evidence to permit an inference of pretext in the stated reasons for the remaining adverse actions. Fox testified that he arranged Brown's station

transfer so that Brown could work in a less demanding environment where Brown's professional problems would be less noticeable, thus "protecting" Brown. Beyond the insufficient proximity evidence already discussed, Brown just submits his belief that Fox's "protection" statement actually meant "protection from retaliation." An unsubstantiated belief is not evidence of pretext. *See Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006). For Brown's lack of acting shift-commander responsibility, Fox explained that Brown was not "removed" from this responsibility. Rather, acting shift commanders were only appointed infrequently, based on a variety of factors (such as availability, seniority, and past experience) instead of on a set formula, and Brown's lack of appointment was simply the result of this imperfect system. Brown offered nothing in response to this. And as for the promotional-listing denial, human resources said Brown was ineligible to test for placement on the promotional list due to his recent disciplinary actions. Brown has not claimed that he was eligible despite his discipline, and he has not shown sufficient evidence of pretext regarding the discipline itself. Therefore, Brown has not shown genuine issues of material fact on whether the city's proffered reasons for its other adverse actions were pretextual.

Given the lack of pretext evidence, there is no validity to Brown's argument that the district court improperly weighed evidence when it granted the city summary judgment. Rather, in making its factual findings, the district court correctly found that "based upon the applicable law, there are not any material factual disputes." *Brown*, 2010 WL 98709, at *1 n.2. Nor does such a finding constitute an improper credibility ruling, as Brown contends. The city demonstrated that there are no disputed issues of material fact with respect to the witnesses' statements, and Brown has offered

no evidence showing otherwise.  The district court cannot be faulted for deciding issues on which there are no material factual disputes.  Summary judgment on Brown's Title VII claims was proper.

## II.     Tennessee Human Rights Act claims.

The district court's without-prejudice dismissal of Brown's Tennessee Human Rights Act claims was also proper, notwithstanding some problematic jurisdictional language used in justifying the dismissal.  The district court undoubtedly had discretion to dismiss these state-law claims once summary judgment had been granted on all claims over which the court had original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).  By doing so, the district court did not adjudicate the merits of these state-law claims.  Brown, however, argues the merits of his Tennessee Human Rights Act claims (albeit in an extremely conclusory fashion).  He does not argue that the district court's dismissal of the state-law claims was improper even if the Title VII claims were properly dismissed.  That being the case, because we uphold the district court's grant of summary judgment as to Brown's Title VII claims, we also uphold the court's without-prejudice dismissal of Brown's Tennessee Human Rights Act claims.  Brown is free to pursue the latter claims in state court, if he so desires, and if such claims can be timely brought.

The district court's judgment is affirmed.

11