Brad HENLEY, David Henley, Tavarus Taylor, Natisha White b/n/f Ralph White, and Dominic White b/n/f Ralph White, Plaintiffs–Appellants,

v.

TULLAHOMA CITY SCHOOL SYSTEM, Tullahoma Board of Education, Dan Lawson, Mel Covington, Frank Cole, Robert Sain and Dean Rodenbeck, Defendants–Appellees.

No. 02–5619.

United States Court of Appeals, Sixth Circuit.

Dec. 5, 2003.

See publication Words and Phrases for other judicial constructions and definitions.

Kenneth O. Fritz, Nelson, McMahan & Noblett, Chattanooga, TN, for Plaintiffs–Appellants.

D. Scott Bennett, Leitner, Williams, Dooley & Napolitan, Chattanooga, TN, John D. Kitch, Kitch & Axford, Nashville, TN, Stuart F. James, Goins, Carpenter & James, Chattanooga, TN, for Defendants–Appellees.

Before CLAY and COOK, Circuit Judges; and STAFFORD, District Judge.[*]

CLAY, Circuit Judge.

Plaintiffs, several students of Tullahoma High School and their parents, filed the instant action under 42 U.S.C. § 1983[1] on May 7, 2001 against the Tullahoma City School System and the Tullahoma Board of Education, as well as several administrators and teachers, alleging that these defendants had retaliated against them for their parents' exercise of their first amendment rights and because of their protected rights of intimate association. Plaintiffs appeal from the March 28, 2002, order of the United States District Court for the Eastern District of Tennessee granting Defendants' motion for summary judgment. Because this Court agrees that summary judgment was properly granted, the Court **AFFIRMS** the district court's order below.

## I.

Plaintiffs Brad Henley, Christine Ray, Tavarus Taylor, Natisha White and Dominic White are or were students at Tullahoma High School in Tennessee. Brad Henley and Tavarus Taylor graduated at the end of the 2000–2001 school year. Plaintiff David Henley is Brad Henley's father, and Plaintiff Ralph White is the father of Plaintiffs Natisha White and Dominic White; Ralph White also is the stepfather of Plaintiff Tavarus Taylor. Defendant Dan Lawson is the Director of Schools for the Tullahoma City Schools. Defendant Mel Covington was the Princi-pal of Tullahoma High School. Defendant Frank Cole was the head basketball coach of the boys' basketball team at Tullahoma High School. Defendant Robert Sain was the head basketball coach of the girls' basketball team. Defendant Dean Rodenbeck was a teacher at the school.

The instant dispute began in November 1998, when Frank Cole, the newly-hired coach of the boys basketball team at Tullahoma High School, refused to permit Plaintiff Tavarus Taylor, then a sophomore, from trying out for the team. According to Defendants, Coach Cole did not permit Taylor to try out because he had not participated in pre-season conditioning drills. In contrast, Plaintiff Brad Henley was permitted to try out because he had participated in the drills. According to Taylor, Coach Cole had told him that he did not want him on the team "because [his] daddy [Ralph White] is always suing (Tullahoma) city officials," (J.A. 520.), allegedly in reference to an employment discrimination lawsuit Ralph White had filed against the City of Tullahoma. White complained about Coach Cole's treatment of Taylor to Principal Covington in November 1998. After investigation, Covington confirmed Cole's assertion that Taylor had not been permitted to try out because he had not participated in pre-season conditioning.

Coach Cole selected Plaintiff Brad Henley for the 1998–1999 basketball season. To Henley's dismay, however, he soon discovered that Coach Cole used sexually and racially charged language. Allegations of Cole's improper language include: (1) stat-

---

[*] The Honorable William Stafford, United States District Judge for the Northern District of Florida, sitting by designation.

1. Plaintiffs' complaint alleged "jurisdiction" under 42 U.S.C. § 1985, but the Complaint failed to set forth any elements of a § 1985 claim. Plaintiffs have not challenged the dis-trict court's dismissal of their § 1985 claim, so that claim is deemed waived for purposes of this appeal. The complaint also alleged a claim for malicious prosecution against another defendant who was voluntarily dismissed from the case on March 6, 2002.

ing that Brad Henley played like a "white nigger," (J.A. 214.); (2) referring to players as "salt and pepper," in relation to their skin color (J.A. 204.); (3) stating that he wanted an all-white basketball team; (4) using words like "ass," "bitch," "motherfucker" and "pussy" (J.A. 13, 180, 183, 190.); and (5) stating that "all niggers could play basketball." (J.A. 203.) There is no evidence that Coach Cole singled Brad Henley out with his inappropriate language or other adverse treatment. Still, Henley was offended by Coach Cole's language and complained to his father, David Henley.

Upon hearing his son's complaints, David Henley complained to Coach Cole in February 1999. Cole allegedly reduced Brad Henley's playing time in retaliation for his father's complaint. David Henley then spoke to Coach Cole again, asking why Brad Henley's playing time had been reduced, to which Cole allegedly replied, "Brad plays like a white nigger." (J.A. 214, 502.)[2] A few weeks later, David Henley took his complaint to Principal Covington, but Covington allegedly indicated that his hands were tied in the matter.

Tavarus Taylor and Brad Henley also tried out for the basketball team as juniors, in November 1999. This time Coach Cole did not select either of them for the team. Taylor claims that Coach Cole told them that he and Brad Henley were not going to play on the team "due to the fact that he didn't have time for our dads to be bitching and whining and trying to file lawsuits and on his case all the time."[3]

Shortly thereafter, Ralph White complained verbally and in writing to Dan Lawson, Director of Schools, about Coach Cole's alleged racist comments and racial bias in selecting members of the basketball team. Lawson referred the complaint to Principal Covington. Covington spoke with Coach Cole, who explained that Tavarus Taylor and Brad Henley did not make the team because they were not good enough.

In December 1999, David Henley and Ralph White filed a discrimination complaint with the United States Department of Education Office for Civil Rights ("OCR"). They complained about Coach Cole's alleged racist and sexual comments as well as discrimination in the selection of players for the boys basketball team. After conducting an on-site investigation, the OCR's lead investigator discussed her findings with school staff on April 27, 2000. Based on this discussion, Director Lawson issued a formal written reprimand to Coach Cole on April 28, 2000. Although noting that the OCR had made no findings of racial bias or sexual harassment, Lawson's letter warned Cole not to use profanity or an intimidating tone with players. In addition, Principal Covington considered terminating Cole, but he found that termination was not practical because the April 15 deadline for advising non-tenured teachers, such as Cole, that their contracts would not be renewed had passed.

In a follow-up letter setting out the OCR's findings, the OCR stated that

**2.** Coach Cole's recollection of David Henley's complaint to him is quite different. According to Coach Cole, David Henley complained to him only about Brad Henley's diminished playing time, not alleged offensive language. Cole then told David Henley that he had reduced Brad Henley's playing time because his skills had not adequately progressed throughout the season. Because this Court is review-

ing this case on a grant of summary judgment, the Court assumes Plaintiffs' version of the facts to be true.

**3.** By contrast, Coach Cole claims that Taylor and Henley (as well as one other junior) were not selected for the team that year because they were not among the top ten players available.

Coach Cole "might have" engaged in racial and sexual harassment. (J.A. 514.) The OCR letter further stated that the "District's apparent failure to promptly address complaints regarding the Coach's behavior may have helped perpetuate the perception of a hostile environment." *Id.* The OCR letter noted, however, that the District had reprimanded Coach Cole and had further agreed to promptly investigate and address complaints of racial and sexual harassment and to strongly encourage all staff to attend cultural diversity training. Pursuant to a resolution agreement with the OCR, the District agreed to issue a letter of apology to the complainants, David Henley and Ralph White. The District also agreed that no person would be subjected to retaliation for having complained to the OCR. Plaintiffs allege that they suffered approximately eleven acts of retaliation for White and Henley's complaint to the OCR. These acts are discussed in Part II.C.3, below.

## II.

### A. Standard of Review

This Court reviews *de novo* a district court's decision to grant summary judgment. *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir.2001). Summary judgment must be granted if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A dispute over a material fact is only a "genuine issue" if a reasonable jury could find for the nonmoving party on that issue. *Cockrel*, 270 F.3d at 1048 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In reviewing the district court's grant of summary judgment, this Court must view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

### B. The Time–Barred Allegations

Because 42 U.S.C. § 1983 does not specify a statute of limitations, federal courts apply the forum state's statute of limitations governing personal injuries. *Wilson v. Garcia*, 471 U.S. 261, 280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The parties agree that this action is governed by Tenn. Code Ann. § 28–3–104, which provides for a one-year statute of limitations for civil actions for compensatory or punitive damages brought under the federal civil rights statutes. Tenn.Code Ann. § 28–3–104(a)(3). Thus, any claim that accrued more than one year prior to the date they filed their complaint—May 7, 2001—is time-barred.

■ Most of the alleged retaliatory conduct accrued prior to May 7, 2000 and therefore is time-barred. Such conduct encompasses the principal injuries alleged in this case, namely Coach Cole's failure to select Tavarus Taylor for the basketball team as a sophomore and a junior; his cutting of Brad Henley's playing time as a sophomore in February 1999; and his failure to select Brad Henley for the team as a junior. These actions occurred in 1998 and 1999. Indeed, they occurred prior to the date that Plaintiffs Ralph White and David Henley complained to the OCR, in December 1999, foreclosing the possibility of any causal nexus between constitutionally protected activity and alleged retaliatory conduct. Even assuming that Coach Cole's alleged retaliatory conduct was in response to the employment discrimination lawsuit Ralph White had filed against the City of Tullahoma, the undisputed fact remains that the non-selections are time-barred.

With little argument, Plaintiffs argue that these otherwise time-barred acts are actionable under the "continuing violations" principle. They are incorrect. "This Circuit employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions." *Sharpe v. Cureton,* 50 C.C.P.A. 1453, 319 F.2d 259, 267 (2003). In a § 1983 case, discrete acts (as opposed to allegations of a hostile environment) are not actionable if time-barred, even when they are related to acts that are not time-barred. *Id.* In this case, Coach Cole's failure to select Taylor and Henley for the basketball team as well as his cutting of Henley's minutes on the court were discrete events, and they are not actionable even assuming that they were related to acts that occurred on or after May 7, 2000. After Coach Cole failed to select Taylor and Henley for the team, Plaintiffs knew or should have known that retaliation may have been afoot. In fact, Taylor testified that Coach Cole had told him in November 1998 he had not been selected "because your daddy [Ralph White] is always suing (Tullahoma) city officials." *Cf. Tolbert v. State of Ohio Dep't of Transp.,* 172 F.3d 934, 939 (6th Cir.1999) (holding that the plaintiffs' "cause of action did not accrue until they knew, or should have known," that defendant was acting in an allegedly discriminatory manner). These discrete events involving non-participation in basketball should have alerted, and in fact did alert, Plaintiffs to protect their rights; Ralph White complained to school officials shortly after the adverse actions took place. Plaintiffs simply sat on their right to file a lawsuit over these actions. *Cf. Sharpe,* 319 F.2d at 266 (holding that firefighters' claims for retaliatory transfers were time-barred, and continuing violation principle did not save claims because the plaintiffs had been alerted to the need to protect their rights at the time the trans-fers were effected; the plaintiffs had filed grievances alleging that the transfers were retaliatory).

To the extent that Taylor and Henley complain of continuing injury from Coach Cole's actions that extended into the limitations period, his continuing failure to place them on the basketball team on or after May 7, 2000 "constitutes a continuing ill effect [from an original violation], and is not the result of continuing unlawful acts." *Id.* at 940 (internal quotation marks and citation omitted). *See also Vandiver v. Hardin County Bd. of Educ.,* 925 F.2d 927, 930 (6th Cir.1991) ("The school officials' mere adherence to a discrete decision regarding [the plaintiff's] academic standing in the fall of 1987 ... does not suffice to state a claim for a continuing violation when he was denied [that] status in the fall of 1988.") For these reasons, the district court correctly granted summary judgment for Defendants on the allegations in Plaintiffs' complaint relating to actions that preceded May 7, 2000.

## C. The Timely Retaliation Allegations

To avoid summary judgment on the timely retaliation claims, Plaintiffs must create a genuine issue of material fact that:

(1) [they] engaged in protected conduct; (2) an adverse action was taken against [them] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [Plaintiffs'] protected conduct.

*Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999) (*en banc; per curiam*). If Plaintiffs meet their burden, the burden of production shifts to Defendants. *Id.* at 399 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97

S.Ct. 568, 50 L.Ed.2d 471 (1977)). If Defendants can show that they would have taken the same action in the absence of the protected activity, they are entitled to prevail on summary judgment. *Id.*

### 1. Protected Conduct

The parties have assumed that Plaintiffs have satisfied the protected conduct element of Plaintiffs' burden by pointing to Ralph White and David Henley's race discrimination complaint to the Office of Civil Rights in December 1999. Therefore, this Court shall not address this factor.

### 2. Adverse Action

Plaintiffs must show that "an adverse action was taken against [them] that would deter a person of ordinary firmness from continuing to engage in that conduct." *Thaddeus–X,* 175 F.3d at 394. Not every adverse action is constitutionally cognizable. *Id.* at 396 (citing *Ingraham v. Wright,* 430 U.S. 651, 674, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.")). The adverse action standard "is intended to weed out . . . inconsequential actions." *Id.* at 398.

■ Plaintiffs have alleged numerous acts, which considered in the abstract, might individually or in combination constitute adverse actions. Most notably, they have alleged that Plaintiffs Brad Henley, Tavarus Taylor and Natisha White were denied the opportunity to play high school basketball. They also point to an incident in which a teacher injured Natisha White's thumb, several disciplinary suspensions, and an instance in which a school employee caused Tavarus Taylor to lose his job. Assuming *arguendo* that these actions were motivated by constitutionally protected speech, they would have the tendency to chill such speech. *E.g., Seamons*

*v. Snow,* 84 F.3d 1226, 1237–38 (10th Cir. 1996) (holding that denying a student participation on the football team for engaging in protected speech was actionable under the First Amendment). By contrast, the incident in which Coach Cole called Ralph White an "idiot" on television does not constitute an adverse action. *Cf. Id.* at 1237 (holding that attempts at persuasion, "even hostile[ ] exchanges of conflicting views" are not tantamount to an adverse action).

### 3. Causation

Plaintiffs allege numerous acts of retaliation which occurred after White and Henley had complained to the OCR in December 1999. There simply is insufficient evidence to create a genuine issue of material fact that these actions were tied to a retaliatory motive.

■ Plaintiffs allege that a teacher, Dean Rodenbeck, broke or dislocated Natisha White's thumb in retaliation for her father's protected speech. Plaintiffs have submitted no evidence, however, showing that Rodenbeck was even aware of the protected speech. Moreover, Natisha White admitted at deposition that Rodenbeck injured her thumb in an attempt to protect another student whom White had already struck numerous times during a hallway brawl. White's participation in the fight was so serious that she pled guilty to assault and disorderly conduct. No reasonable jury could find that Rodenbeck was waiting in the wings for the opportunity to pounce on White and injure her in retaliation for her father's complaint to the OCR, particularly where there is no evidence that Rodenbeck was even aware of the complaint.

■ Plaintiffs allege that it was retaliatory for Tavarus Taylor to have received a three-day suspension on May 5 and May

11, 2000 for being rude and disruptive, shortly after the OCR had completed its onsite investigation. Plaintiffs also allege that Dominic White was given a three-day suspension for "running in the corridors" and running & horseplay in the hall." Plaintiffs have proffered no details about these acts of discipline, in particular as to whether any of the individual Defendants even were involved in meting out the discipline. Therefore, there is no genuine issue of material fact that these acts were linked with a retaliatory motive.

■ Plaintiffs allege that Defendants cut Natisha White from the girls basketball team in retaliation for the OCR complaint. It is undisputed, however, that Coach Sain selected Ralph White's other daughter, Dominic, for the team, seriously undermining Plaintiffs' allegation that Coach Sain, like Coach Cole, sought to retaliate against the White family. Plaintiffs attempt to steer clear of this fact by alleging that Coach Sain purposefully kept one White sister on the team and cut the other in order to drive a wedge between the two sisters. In support of this theory, they cite to Coach Sain's statement, made before the basketball season, expressing concern about cutting one of the White sisters in light of the OCR complaint. (J.A. 694.) But Coach Sain's mere consciousness of the OCR complaint and his concern that his coaching decision to cut Natisha White from the team might be perceived as retaliation does not create a genuine issue of retaliatory motive. Indeed, a fair reading of the relevant deposition testimony shows that Coach Sain expressed a desire to avoid retaliation, not carry it out. *Cf. Jackson v. U.S. Postal Serv.,* 162 F.Supp.2d 1246, 1260 (D.Kan.2001) ("Of course, awareness of plaintiff's protected activity, without more, does not create an inference of unlawful retaliation. Plaintiff must still establish the causation element

of her prima facie case."), *aff'd* No. 01–3390, 2002 WL 31450550, 50 Fed.Appx. 387 (10th Cir. Nov. 4, 2002). The only non-speculative evidence on the record is that Coach Sain selected Dominic for the team because she was a very skilled player and that he did not select Natisha because she was not skilled enough. *Cf. Rodgers. v. Banks,* 344 F.3d 587, 602 (6th Cir.2003) (to show that speech was a motivating factor in the adverse action, the plaintiff must "point to specific, nonconclusory allegations reasonably linking her speech to" the action) (internal quotation marks and citations omitted).

■ Plaintiffs allege that Tavarus Taylor suffered unlawful retaliation when Coach Cole caused Taylor to lose his job at Food Lion by telling his manager that Taylor had sexually harassed Cole's wife at the store. Taylor admitted at deposition, however, that Coach Cole's motivation had nothing to do with his father's protected speech, but rather, an incident in which Coach Cole had threatened to discipline Taylor because Taylor (by his own admission) refused to stop walking across the basketball floor which was being cleaned. Taylor further testified that Coach Cole got him fired because Taylor had complained to Principal Covington about this incident. Thus, there is no evidence of a causal connection between Taylor's job loss and his father's protected speech.

Plaintiffs allege that a tenth grade English teacher, Ms. Masouda, told Dominic White that her friendship with Kristin Ray, another student, was unacceptable because they were different races and also that Masouda gave Ray and White detention when they became unruly after complaining about the temperature in the classroom. Plaintiffs also allege that another teacher, Ms. Ledbetter, denied Ray the right to go to the bathroom, and when she went anyway, she received detention.

Plaintiffs, however, have failed to submit any evidence linking Masouda's and Ledbetter's actions to the OCR complaint.

Plaintiffs allege that Coach Sain made Dominic White perform intense running drills called "suicides" on November 19, 2001, even though her knee was hurting. At deposition, however, Dominic admitted that Sain told her that she could leave the floor after she told him that she was in pain. Thus, there is no genuine issue of material fact that White suffered an adverse action. Moreover, there is no evidence on the record that Coach Sain harbored a retaliatory motive.

■ Plaintiffs also complain that Coach Sain had compelled Dominic to apologize to her teammates for failing to participate in a fundraiser for the team, even though she had had a legitimate family excuse for not attending. There simply is insufficient evidence to create a genuine issue of material fact as to a retaliatory motive or an adverse action. Plaintiffs' reliance on the *Seamons* case is misplaced. There, the student was forced by his football coach to apologize for his protected speech (a complaint about a hazing incident). When he refused, he was dismissed from the team. *Seamons*, 84 F.3d at 1230. There was a clear nexus between the adverse action (forced apology and dismissal from the team) and the protected speech. Here, Dominic White's forced apology had nothing do with her protected speech, and she was never disciplined for refusing to apologize.

Plaintiffs allege that in the summer of 2001, after they filed their federal court complaint, Coach Cole approached Ralph White at a local convenience store and acted in a threatening way. This incident occurred a year-and-a-half after the protected speech at issue in this case—the OCR complaint. No other adverse actions with a causal nexus to the OCR complaint

occurred in the interim. Moreover, Coach Cole was no longer the basketball coach as of the summer of 2001, so it is unclear whether his alleged actions can even be attributed to the other Defendants. Without more, Coach Cole's alleged assault is insufficient to create a genuine issue for trial. *Cf. Wallscetti v. Fox*, 258 F.3d 662, 669 (7th Cir.2001) (holding that a four-month time-gap between the protected conduct and the adverse action, without more, "is too long to support a reasonable inference of causation") (citations omitted).

In sum, there is no evidence that Plaintiffs suffered adverse actions that were causally connected to constitutionally protected conduct. Accordingly, the district court properly entered summary judgment for Defendants on the timely allegations of retaliation contained in Plaintiff's complaint.

### D. The Timely Freedom of Association Claims

The complaint alleges that Defendants violated the rights of Brad Henley and Tavarus Taylor to be friends; the rights of Natisha White and Dominic White to associate with their father, Ralph White; Listen Ray's right to associate with Dominic White; and David Henley's right to associate with Ralph White. These claims fail as a matter of law because they are duplicative of the meritless retaliation allegations.

As the Supreme Court has explained, "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the States because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Roberts v. United States Jaycees*, 468 U.S. 609, 617, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Thus, certain "highly personal" relationships are protected from

"unjustified interference by the State." *Id.* at 618. These relationships are "distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Id.* at 620. Following this line of reasoning, this Court has held that the right of intimate association attaches to familial relations like those between father and daughter. *See Johnson v. City of Cincinnati,* 310 F.3d 484, 499 (6th Cir.2002) (holding that the associational right to participate in child rearing extends to grandparents; noting that "a family member's right to participate in child rearing and education is one of the most basic and important associational rights protected by the Constitution"); *see also Roberts,* 468 U.S. at 619 (noting that one example of a highly personal relationship that warrants protection from unjustified State interference involves "the raising and education of children"). It is less clear from the precedents whether a similar right attaches to friendships. In principle, "highly personal" friendships should satisfy the *Roberts* criteria of relative smallness, a high degree of selectivity and seclusion of from others in critical aspects of the relationship. Since Defendants do not challenge the nature of the friendships at issue in this case, this Court assumes that the freedom of association attaches to Brad Henley and Tavarus Taylor's friendship as well as Kristen Ray and Dominic White's friendship.

This Court dealt with similar claims in the public school setting a few years ago. *Ward v. Athens City Bd. of Educ.,* No. 97–5967, 1999 WL 623730 (6th Cir. Aug. 11, 1999) (unpublished), involved a First Amendment retaliation lawsuit brought when two sisters were denied re-admission to their elementary school because of their mother's history of complaints about the school. The plaintiffs alleged both a First Amendment retaliation claim and a freedom of association claim. The Court found that the freedom of association claim "would require us to determine whether the [school] board's action was an 'undue intrusion' by the state into the relationship between the Ward children and their mother." *Ward,* 1999 WL 623730, at *6 (citing *Adkins v. Bd. of Educ. of Magoffin County,* 982 F.2d 952, 956 (6th Cir.1993) (citing *Roberts,* 468 U.S. at 618–19)). The Ward plaintiffs' claims, however, were not based on the school's interference with their family relationships, but on the school's "penalization of the blameless Ward girls on grounds of their association with their mother." *Id.* The Court therefore found that this claim was duplicative of the First Amendment retaliation claim. *Id.* The Court further held that to maintain a separate claim based on freedom of association, the plaintiffs needed to have shown that the adverse action "would have been constitutionally impermissible even if the action against [their mother] was itself warranted (that is, even if all motives were pure)." *Id.*

■ Plaintiffs herein have not attempted to show, and cannot show, that the alleged adverse actions they suffered would have been constitutionally impermissible even if Defendants had not had a retaliatory motive. Plaintiffs have not shown, and cannot show, how non-participation on the basketball team, the discipline they suffered or other adverse actions that occurred off school property unduly intruded on their familial relations or friendships. These actions did not pose a "direct and substantial" limitation on these associations, but rather, were collateral effects of Defendants' alleged intent to retaliate against protected speech. *See Lyng v. Castillo,* 477 U.S. 635, 638, 106 S.Ct. 2727, 91 L.Ed.2d 527 (1986) (state action must "'directly and

substantially' interfere" with familial associations in order to violate freedom of association) (quoting *Zablocki v. Redhail,* 434 U.S. 374, 386–87, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978)); *Ward,* 1999 WL 623730, at *7 (holding that school's refusal to admit children into school was not actionable as an intrusion on the association between the children and their mother, because the school's refusal stemmed from an intent to retaliate, not to punish the association; the children were "collaterally" damaged). Accordingly, dismissal of Plaintiffs' freedom of association claims was warranted because they were merely duplicative of their meritless retaliation claims.

### III.

For all the foregoing reasons, the district court properly entered summary judgment for Defendants on the merits of Plaintiffs' First Amendment retaliation and freedom of association claims. This Court need not reach alternative grounds for dismissal, such as the lack of municipal liability and qualified immunity for the individual Defendants. *See Ewolski v. City of Brunswick,* 287 F.3d 492, 516 (6th Cir. 2002) ("Having concluded that the Appellant has not shown a genuine issue of material fact as to any of the asserted constitutional claims, we therefore conclude that the district court correctly dismissed the Appellant's municipal liability claims."); *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). Accordingly, the judgment of the district court is **AFFIRMED.**