**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0616n.06
Filed: October 15, 2008

NO. 07-4033

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TABATHA MULLINS, | ) | |
| | ) | |
| *Plaintiff-Appellant,* | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| U.S. BANK and | ) | O P I N I O N |
| KENNETH KESSLER, | ) | |
| | ) | |
| *Defendants-Appellees.* | ) | |

Before: **MOORE and COOK, Circuit Judges; and HOOD, Senior District Judge.***

**HOOD, Senior District Judge**. Plaintiff-Appellant Tabatha Mullins ("Mullins" or "Plaintiff") brought this action against Defendants-Appellees U.S. Bank and Kenneth Kessler (collectively, "Defendants") alleging employment discrimination arising from violations of federal law. The district court granted summary judgment in favor of Defendants and dismissed Plaintiff's claims in their entirety. Plaintiff argues that the district court erred in concluding that she failed to make her prima facie case for pregnancy and race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. For the reasons stated below, we **AFFIRM** the decision of the district court.

---

\* The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

In November of 2003, Mullins, an African-American woman, began employment as an in-store banker for Defendant U.S. Bank in Columbus, Ohio. During her employment with U.S. Bank, Mullins' supervisor was branch manager Defendant Kenneth Kessler ("Kessler"). In early 2004, Mullins learned that she was pregnant. Kessler was aware that Mullins was pregnant.

Mullins testified in her deposition that upon learning of her pregnancy, the circumstances of her job remained the same and no one treated her differently until approximately August 2004. Mullins testified that Kessler became easily frustrated with her and overly dismissive when she would ask for direction or assistance. Mullins alleged that Kessler once threw a keyboard, striking her arm and knocking over items from the bank ledge into the Kroger store because Mullins failed to print a balance sheet on time at the end of a workday. Mullins' co-worker disputed this account.

Another co-worker, Melissa Evans, who is no longer employed by U.S. Bank, testified that Kessler treated Mullins differently than he treated the rest of the employees. Evans testified that she did not "want to say that [Kessler] was a racist, but you could tell that he treated her differently than he treated the rest of us." Evans speculated that "[i]t wasn't because of her age, because I was younger than her. There were people that were older than her. We were female, so it's not because we were female. He just treated [Mullins] differently."

On September 15, 2004, prior to the commencement of her workday, Mullins began to have cramps and spotting associated with her nineteen-week pregnancy. She knew her work day would last eleven hours and that she had vacation and sick leave available. After she reported to work, Mullins informed Kessler of her condition. Kessler suggested she consult with other female employees who had gone through pregnancies. The other employees advised her to contact her doctor. Mullins called her physician, who told her to drink water for one hour to avoid dehydration, which the doctor indicated could cause her cramping. The doctor instructed Mullins to report to the

2

emergency room if the cramping did not subside within one hour.

Mullins testified that Kessler tacitly required her to stay at work until after 5:30 P.M., despite being aware of her condition. Mullins asserted that she told Kessler that she was in pain and that she needed to go to the emergency room. She did not tell Kessler that the doctor ordered her to go to the emergency room. According to Mullins' deposition testimony, Kessler responded by saying that she should take her 30-minute lunch break and told her to assist customers. He also told her that he needed her to work the next day.

According to Mullins, when Kessler found her lying on the floor in the back of the office later that day, he told her to leave and "to do whatever it is" she was going to do. Mullins never explicitly requested to use her sick or vacation leave, and Kessler did not refuse a request by Mullins to seek medical treatment. In his deposition, Kessler disputed Mullins' version of these facts, and maintained that he consistently encouraged her to seek medical attention.

Mullins was hospitalized at Mount Carmel East Hospital for four days due to arrested premature labor. She was placed on bed rest and began using her short-term disability ("STD") on September 16, 2004. Mullins' STD leave was approved through December 6, 2004. Her STD benefits paid approximately 50-60% of her normal pay. On October 21, 2004, Mullins was readmitted to the hospital and gave premature birth to her daughter three days later. The baby died approximately one hour after birth.

On November 1, 2004, Kessler phoned Mullins to inquire about her condition and whether she intended to return to work. According to Kessler, during this conversation, Mullins stated that she did not intend to return to work and was resigning. Kessler maintained that Mullins stated she intended to move to Tennessee with her husband to be closer to family following the death of her daughter. Prior to September 15th, Mullins had made plans to transfer to a Tennessee branch of U.S. Bank and Kessler was aware of these plans. Kessler helped her navigate U.S. Bank's transfer

procedures. She had even chosen a bank branch in Tennessee and told co-workers they planned to move there after the baby was born.

Mullins denied stating that she intended to resign. Mullins claimed she told Kessler she wanted a transfer to a U.S. Bank branch in Tennessee. Mullins maintained she intended to complete her maternity leave and return to work at the Columbus branch in the first week of December.

Following the phone call, Kessler drafted a memorandum documenting the conversation and placed it in Mullins' personnel file. In the document, Kessler indicated that Mullins "stated that effective today that she would not be returning to work because they were moving to Tennessee at the end of the month." Kessler contacted Stephen Phillips, a U.S. Bank human resources employee. Phillips instructed Kessler to process Mullins' resignation. In doing so, Kessler selected "job abandonment" as the reason for ending the employment. "Resignation" was not available as a classification on the computer program. Kessler acknowledged that selecting "job abandonment" as the basis for the termination was an error because it terminated Mullins' STD benefits prior to the end of her approved maternity leave. Mullins was not notified that her employment had ended.

Approximately one week later, Mullins received a pay stub with a zero balance, indicating her STD benefits had been terminated. She spoke with Phillips, who told Mullins that it was his understanding she had quit her job. Mullins assured him that was not her intention. Mullins denied telling Kessler she intended to move to Tennessee. Phillips said the records indicated she had quit her job, the resignation had been processed, and that he lacked authority to rescind her resignation. He indicated that the bank, at that time, would not rehire her. A few days later, on November 12, 2004, Mullins' husband delivered a letter to Kessler on her behalf, expressing her desire to return to work after her maternity leave ended. Kessler forwarded the letter to Phillips, who sent it to U.S. Bank's general counsel.

After learning that Mullins did not intend to resign, U.S. Bank recognized the discrepancy

regarding the classification of her employment release. On November 18, 2004, Phillips attempted to inform Mullins directly that she could return to work in the same position she previously held once her maternity leave ended. Mullins did not personally respond. On the same day, Mullins' attorney sent a letter to Phillips outlining his position as to Mullins' potential claims against U.S. Bank and directing Phillips to have legal counsel contact him. On November 29, 2004, and in a voicemail message to Mullins' attorney, U.S. Bank again extended an offer to reinstate Mullins at the Columbus branch, or a comparable position elsewhere. Mullins' attorney sent a letter dated that same day indicating that, after talking with Phillips, Mullins had decided to relocate to Tennessee and could not resume her previous position.

The parties do not dispute that Mullins received all of the benefits she was due for the entire period of her STD leave, although the November payments were not received until the end of January 2005. In accordance with its November 29, 2004, correspondence, U.S. Bank fully paid STD benefits owed as a result of Kessler selecting "Job Abandonment" instead of "Voluntary Termination." Mullins moved to Tennessee in the first week of December 2004.

Mullins filed suit in federal district court on November 2, 2005. She filed her first amended complaint on December 2, 2005, and second amended complaint on December 18, 2006. Defendants moved for summary judgment on all of Mullins' claims. On July 17, 2007, the district court granted Defendants' motion for summary judgment with respect to Mullins' federal claims and declined to exercise supplemental jurisdiction over Mullins' state law claims. Mullins then brought this appeal.

## II.     STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed *de novo*. *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

5

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994) (citations omitted). The Court must construe the evidence in the light most favorable to the nonmoving party, in this case, Mullins. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). A mere scintilla of evidence is insufficient; rather, "there must be evidence on which the jury could reasonably find for" the non-moving party. *Anderson*, 477 U.S. at 252.

## III.     ANALYSIS

### A.     Plaintiff's Discrimination Claims

Mullins claims that U.S. Bank and Kessler violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, by discriminating against her on the basis of her pregnancy and race.[1] The district court found that Mullins failed to meet her initial burden on both claims because she suffered no adverse employment action. We agree with the district court's result, but for the following reasons.

*1. Plaintiff's Prima Facie Case*

In the absence of direct evidence of discrimination, as is the case here, a plaintiff in a Title

---

[1] The Pregnancy Discrimination Act provisions of Title VII prohibit sex-based discrimination on the basis of pregnancy. 42 U.S.C. § 2000e(k). "Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . [including benefits]." *Id*. Title VII's core anti-discrimination provision states "[i]t shall be unlawful employment practice for an employer . . . to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment . . ." on the basis of race. *Id*. § 2000e-2(a)(1).

6

VII discrimination case may establish discriminatory employment practices by circumstantial evidence. The *McDonnell Douglas* burden-shifting framework is used to analyze Title VII discrimination cases. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To state a prima facie case for pregnancy discrimination, a plaintiff "must show (1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." *Asmo v. Keane, Inc.*, 471 F.3d 588, 592 (6th Cir. 2006) (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000)). To state a prima facie case for racial discrimination, a plaintiff must show that "(1) [she] was a member of a protected class; (2) [she] suffered an adverse employment action; (3) [she] was qualified for the position; and (4) [she] was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (citing *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)).

It is undisputed that Mullins was a pregnant African-American woman at all relevant times and that she was qualified for the position she held at U.S. Bank. The parties differ greatly on whether the third element of the prima facie case – an adverse employment action – occurred. Mullins argues that Kessler's refusal to release her from work on September 15th and her termination and subsequent loss of benefits were adverse employment actions.

Mullins' argument that she suffered an adverse employment action when she was not granted sick leave or vacation leave, or released from work early on September 15th is not supported by the facts. From the deposition testimony, it is clear that Mullins never explicitly requested to take leave or be released early from work. Mullins did not cite, nor did the Court find, any authority suggesting that, unlike nonpregnant employees, an employer must place a pregnant employee on sick or vacation leave without a specific request by the employee or grant an early release from work. *See Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 575 (6th Cir. 2006) (an employer is not

7

required to give preferential treatment to pregnant employees). Mullins never clearly expressed the severity of her symptoms, until Kessler found her lying in the back of the office. She wrongly assumed the worst by fearing Kessler would discharge her for seeking treatment. *See Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002) (quoting *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987) ("employee is obliged 'not to assume the worst, and not to jump to conclusions too fast'" when determining an employer's motivations). Mullins fails to make out a prima facie case for discrimination based upon her allegation that she was not allowed to leave work early.

We need not decide whether Mullins' termination was in fact an adverse employment action. Assuming, *arguendo*, that Mullins has met her prima facie burden under *McDonnell Douglas* regarding her termination, her claim suffers a fatal flaw, as discussed below.

*2. Employer's Legitimate Nondiscriminatory Reason & Employee's Proof of Pretext*

Once a plaintiff meets her initial burden, the employer must provide a "legitimate, nondiscriminatory reason" for its adverse employment decision. *Asmo*, 471 F.3d at 592 (citing *Cline*, 206 F.3d at 658). If such a reason is provided, and to survive a motion for summary judgment, the employee must then prove "the employer's articulated reason was a pretext for intentional discrimination." *Id.*

An employee can prove pretext by showing either "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action." *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 883 (6th Cir. 1996) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). "[A]s long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106,

1117 (6th Cir. 2001) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998)). Whether there is an honest belief in a proffered reason is based on the employer's reasonable reliance on particularized facts before it at the time of the decision. *Id.*

In the present case, assuming, *arguendo*, that Mullins met her prima facie burden regarding her termination, Defendants have asserted that Kessler's subjective belief that Mullins resigned her position was a legitimate, nondiscriminatory reason for their actions. We agree. Mullins argues that Kessler's belief was either dishonest or mistaken and, as such, is proof of pretext. However, this argument fails as a matter of law because Kessler honestly believed Mullins resigned. At the time of the termination action, Kessler documented his conversation with Mullins in which he believed she resigned. Kessler then informed human resources of the same and processed her resignation in the U.S. Bank human resources computer database. Kessler reasonably relied on particularized facts regarding Mullins known at the time of the November 1st conversation to form the honest belief that she was resigning. Specifically, Kessler knew that Mullins had previously planned to move to Tennessee to be closer to family and that she had recently lost her child. Kessler's mistaken interpretation of Mullins' actions are not sufficient to establish pretext.

Moreover, Mullins' testimony regarding Kessler's alleged discriminatory motive is equivocal at best. In her deposition, Mullins offered other reasons for any perceived mistreatment by Kessler, including Kessler's contemporaneous health issues and Mullins' mistakes on the job. Mullins' co-workers also described the relationship between the Mullins and Kessler as a personality clash. Thus, Mullins has failed to provide evidence of pretext by showing that Defendants' articulated reason had no basis in fact, that it did not actually motivate Defendants, or that it was insufficient motivation for her termination.

The Court holds that Mullins' claims of pregnancy and race discrimination fail because she did not prove that Defendants' honest belief that she resigned was pretext. The district court did not

err in granting summary judgment in favor of Defendants because Mullins failed to meet her burden of proof.

**B.** **Consideration of Documentary Evidence**

Mullins argues that the district court erred in considering the reinstatement letter U.S. Bank sent to Mullins' counsel because the letter was barred by Federal Rule of Evidence 408. Because Mullins does not claim that U.S. Bank refused to reinstate her and we have decided the merits of this case without reliance on said letter, we decline to decide this issue.

**IV.** **CONCLUSION**

For the reasons stated above, the decision of the district court is **AFFIRMED**.