NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0616n.06

No. 08-4318

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Aug 27, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| DENNIS HARRIS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| BUTLER COUNTY, OHIO, BY AND | ) | SOUTHERN DISTRICT OF OHIO |
| THROUGH ITS SHERIFF'S | ) | |
| DEPARTMENT; RICHARD K. JONES, | ) | |
| SHERIFF, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN DOE 1, 2, and 3, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

Before: SILER, GIBBONS, and GRIFFIN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff-appellant Dennis Harris appeals the

district court's grant of summary judgment on Harris's claim of wrongful termination in violation

of the First and Fourteenth Amendments and 42 U.S.C. § 1983. Because the district court did not

err in granting summary judgment, we affirm.

I.

Harris was hired as a deputy sheriff by Butler County in 1999. Aside from a brief four-month

departure during which Harris held a job outside of the sheriff's department, Harris worked in the

1

corrections division of the sheriff's department until his separation in January 2006.

Defendant Richard Jones was elected Butler County Sheriff in November 2004 and began his new position in January 2005. Harris received his regular commission from Jones after being re-sworn in but did not receive a "special commission" that would allow him to carry a gun and to work additional shifts for outside companies. Harris claims that he attempted to arrange a meeting with Jones to discuss the special commission but was unable to schedule it. Harris subsequently happened upon Jones in a hallway and asked why he had not received his special commission. Harris claims that Jones responded that it was "because you was [*sic*] out campaigning for Patton."[1] Harris Dep. at 87. Patton was one of Jones's opponents for the office of sheriff. Harris states that he denied campaigning for Patton and that Jones responded that "I heard you was [*sic*] at a fundraiser . . . and you was [*sic*] really shoveling it on me and talking bad [about me]." Harris Dep. at 87-88. Harris asserts that Jones continued to complain that Harris had never campaigned for him and stated that Harris "should pick [his] friends wiser." Harris Dep. at 105-106. Harris responded that he did not campaign for anyone but admitted that he had attended a hog roast fundraiser for former Sheriff Don Gabbard that was held at Harris's church. Several days later, Jones told Harris that he had decided to give him the special commission after his wife had encouraged him to do so.

The district court clarified the import of this conversation in its order dated September 3, 2008:

> Plaintiff Harris and former Sheriff Gabbard's family belong to the same church. Also involved is another Butler County Deputy Sheriff, Roger Brooks. Brooks is the son-

---

[1]Although the parties dispute the content of the conversation, we credit Harris's version of the facts because we are reviewing the district court's grant of summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

in-law of former Sheriff Gabbard and is also Plaintiff Harris' good friend. Apparently there is a long standing hostile relationship between former Sheriff Gabbard and Sheriff Jones and their families, which Plaintiff Harris believes contributed to Sheriff Jones' animosity toward him.

*Harris v. Butler County*, No. 1:07CV069, 2008 U.S. Dist. LEXIS 86385, at *4 (S.D. Ohio Sept. 3, 2008).

Jones asserts that Harris was not terminated for political reasons but for his admitted violation of the Butler County Sheriff's Office associations policy, which prohibits employees from establishing personal relationships with former inmates for at least twelve months after an inmate has been released from detention. While admitting that he contacted a former inmate, Harris claims that he wanted to encourage repeat offenders to improve their lives and stay out of prison in the future. He obtained contact information from jail records for a former inmate, Tabitha Holland, and contacted her several times. First, he called Ms. Holland's home contact number and was told by her mother that Holland was not there. Another time, Harris called Holland and spoke with her directly. He identified himself as "Dave Harris," rather than "Dennis Harris," and asked to see her. Holland refused to meet with Harris because she did not know who he was. Harris subsequently called Holland again and arranged to drive by her home, stopping the car to speak with her for about five minutes. Harris met with Holland one other time, at which point she entered Harris's car and they had a conversation. Harris claims that Holland gave him a brief kiss before exiting the car, but Holland complained that Harris groped her while she was in his car.

Holland subsequently reported these contacts to the sheriff's office, and Harris was brought in to discuss the allegations with Captain Katie McMahon. Harris admitted to contacting Holland and the brief kiss but denied any other physical contact with Holland. Captain McMahon informed

3

Harris that his contacts with Holland violated the department's associations policy, and he was told that he could either resign to avoid publicity or that he would be terminated. Harris was given until the next morning to make his decision. After speaking with his wife and his union steward, Harris resigned that afternoon rather than waiting until the following morning.

Harris filed suit, alleging violations of his First and Fourteenth Amendment speech and association rights as well as procedural and substantive due process violations.[2] He made additional state law claims including violations of his rights to free speech and assembly, retaliatory discharge, defamation, and tortious interference with an employment relationship. The defendants moved for summary judgment on all of Harris's claims, which the district court granted in an order dated September 3, 2008.

The district court found that Harris presented no evidence to support his claim of a substantive due process violation and that he could not establish a procedural due process violation because his resignation was voluntary and informed. *Harris*, 2008 U.S. Dist. LEXIS 86385, at \*17-21. The district court also granted summary judgment on Harris's state constitutional claims, finding that there is no private right of action to remedy violations of the Ohio Constitution. *Id.* at \*21-22. Next, the district court found that Harris could not establish a violation of Ohio public policy because he was not an at-will employee and could not maintain either a defamation or tortious interference

---

[2]We note that Harris's complaint was based upon Sheriff Jones's direct actions rather than a theory of *respondeat superior*. Section 1983 does not permit municipal liability based upon a theory of *respondeat superior*. *See Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005). "Municipal liability may attach for policies promulgated by the official vested with final policymaking authority for the municipality." *Id.* (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 482-83 (1986)). In this case, Sheriff Jones's personnel management decisions constituted the policy of Butler County, Ohio.

4

with employment claim because he presented no evidence that the defendants were contacted by any potential employers or made any false claims relating to Harris. *Id.* at *22-27. Finally, the district court addressed Harris's claim that he was terminated in retaliation for failing to support Sheriff Jones, in violation of his federal constitutional rights of free speech and political association. It found that Harris was unable to establish a *prima facie* case of retaliation for political speech because Jones's actions were based upon his dislike of Harris's friendships rather than his political leanings. *Id.* at *29. In addition, even if Harris could establish a prima facie retaliation case, he could not survive the burden-shifting analysis because of his admitted violations of the associations policy via his contacts with Holland. *Id.* at *31. Harris timely appealed.

## II.

We review a district court's grant of summary judgment *de novo*. *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007). Summary judgment is warranted if "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The district court must draw all reasonable inferences in favor of the nonmoving party." *Skowronek v. Am. S.S. Co.*, 505 F.3d 482, 484 (6th Cir. 2007) (citation omitted).

A plaintiff must establish three elements for a claim of employment-based retaliation: first, that the employee "engaged in protected conduct"; second, that "an adverse action was taken against the [employee] that would deter a person of ordinary firmness from continuing to engage in the conduct"; and third, that "the adverse action was motivated at least in part by the [employee's] protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*) (Moore, J.).[3]

[3]Some cases cite a test with four prongs, adding in a second element that the defendant knew about the plaintiff's protected conduct. *See Thaddeus-X*, 175 F.3d at 387 n.3. "This element is

5

If the plaintiff succeeds in establishing these three elements, then the defendant must show that he would have made the same decision in the absence of the protected conduct to be entitled to prevail on summary judgment.  *See id.* at 399.

The right of political association is well established as falling within the core of activities protected by the First Amendment.  *See Sowards v. Loudon County*, 203 F.3d 426, 432 (6th Cir. 2000).  "Support of a political candidate falls within the scope of the right of political association." *Id.* (citing *Elrod v. Burns*, 427 U.S. 347, 356-57 (1976)).  Although Harris stated in his deposition that he did not campaign for any of the candidates for sheriff, he had previously attended a political fundraiser for former Sheriff Gabbard, the sheriff before Jones.  Harris also claims that Jones believed that Harris had campaigned for a political rival, Patton.  In addition, Harris did not campaign for Sheriff Jones and claims that he was berated by Jones for failing to campaign for him. Therefore, Harris has established the first element of protected conduct for his retaliation claim.  *See Sowards*, 203 F.3d at 432.

The second element of the retaliation claim is that the employee suffered a materially adverse action.  "The term 'adverse action' is drawn from employment case law; examples in that context include discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote." *Thaddeus-X*, 175 F.3d at 396 (citations omitted).  "The Sixth Circuit has consistently held that *de minimis* employment actions are not materially adverse and, thus, not actionable."  *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000) (citations omitted).  Harris argues that he suffered two adverse employment actions:  his failure to receive his special commission in a timely

captured by the third prong above:  the defendant must have known about the protected activity in order for it to have motivated the adverse action."  *Id.*

6

manner and his effective termination.

Harris faced a two to three month delay in receiving his special commission, which could be sufficient to constitute a materially adverse employment action if it caused Harris to suffer a "material loss of benefits."  *See Jordan v. City of Cleveland*, 464 F.3d 584, 596 (6th Cir. 2006) (finding that a "denial of money" qualified as a materially adverse action in a Title VII retaliation case).[4]  However, Harris acknowledged in his deposition that the special commission does not entitle a deputy to additional pay; rather, it allows deputies to perform special "blacktopping details" directing traffic for outside companies.  In *Bowman*, a ten-day loss of a position which was merely a title and did not include additional duties or extra pay was not held to be a materially adverse employment action in a Title VII case.  220 F.3d at 462.  In *Smith v. County of Hamilton*, a loss of opportunity for compensatory time was not held to constitute an adverse employment action.  34 F. App'x 450, 456 (6th Cir. 2002).  Given the temporary nature of the delay in receiving the special commission and a lack of direct effect on Harris's level of pay, we find that the temporary delay in receiving his special commission did not constitute a material adverse employment action.  *See Freeman v. Potter*, 200 F. App'x 439, 442 (6th Cir. 2006) (finding that a material adverse employment action generally "inflicts *direct* economic harm") (emphasis added).

Harris next argues that he meets the second prong of his retaliation claim through his effective termination.  Although Harris submitted a letter of resignation, he did so under the threat of immediate termination if he chose not to resign.  Generally, employee resignations are presumed

---

[4]Although retaliation claims arise in a variety of constitutional and statutory contexts, "the essential framework remains the same" despite the variations that can arise in different bodies of statutory law.  *See Thaddeus-X*, 175 F.3d at 386-87.

to be voluntary. *See Rhoads v. Bd. of Educ.*, 103 F. App'x 888, 895 (6th Cir. 2004) (citing *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999)). We have found, however, that an employee's resignation may constitute a constructive discharge when the employee reasonably believed his termination to be imminent. *See Ford v. Gen. Motors Corp.*, 305 F.3d 545, 554 (6th Cir. 2002). Although it is debatable whether Harris has met his burden of demonstrating constructive discharge, we need not decide whether Harris has satisfied the second prong of his claim of employment-based retaliation because the third element is dispositive. *See, e.g., Mullins v. U.S. Bank*, 296 F. App'x 521, 526 (6th Cir. 2008) (assuming plaintiff showed an adverse employment action when she was unable to satisfy later elements of the claim); *Holley v. Giles County*, 165 F. App'x 447, 451-52 (6th Cir. 2006) (assuming without deciding that plaintiff's resignation constituted a constructive termination and therefore an adverse action).

Harris is unable to meet the third prong of demonstrating that the adverse employment action was motivated at least in part by his protected conduct. This element requires a causal connection between the employee's protected conduct and the adverse action taken against him. *See Thaddeus-X*, 175 F.3d at 394. Harris cannot show that his political affiliation was a substantial or motivating factor for the resignation because he has not demonstrated a link between his resignation and his lack of political support for Sheriff Jones. *See Kreuzer v. Brown*, 128 F.3d 359, 363 (6th Cir. 1997) (requiring that it be a motivating factor). Indeed, Harris admitted violating the associations policy and knew that a violation of the associations policy would result in termination. Harris's belief that he was terminated for political reasons is insufficient to demonstrate the causal connection required to establish a claim of retaliation. *See Coffey v. Chattanooga-Hamilton County Hosp. Auth.*, No. 98-

8

6230, 1999 U.S. App. LEXIS 25187, at *13 (6th Cir. Oct. 6, 1999) (unpublished) (finding that "rumors, conclusory allegations and subjective beliefs" are insufficient to defeat a motion for summary judgment) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992)).

Finally, even if Harris could establish a *prima facie* case of retaliation, he would be unable to survive the burden shifting portion of the analysis. "If the plaintiff meets [his] burden, the burden then shifts to the defendants to prove by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Sowards*, 203 F.3d at 431 (citation omitted). Butler County has presented evidence that Harris's admitted violation of the associations policy led to his resignation and that Harris therefore would have been asked to resign or be terminated even if he had not engaged in any protected conduct. Harris also stated that he knew he could be terminated for his contacts with Holland. Butler County's interest in preventing exploitative relationships between its employees and former inmates constitutes a legitimate reason supporting Harris's termination. Harris has not come forward with evidence permitting the trier of fact to conclude that Butler County would not have terminated him absent protected conduct on Harris's part. *See Garvey v. Montgomery*, 128 F. App'x 453, 463 (6th Cir. 2005) (holding that evidence of misconduct or a "deficient work performance record" precluded the plaintiff from establishing a genuine issue of material fact such that a reasonable juror could find for the plaintiff)*; Driggers v. City of Owensboro*, 110 F. App'x 499, 511 (6th Cir. 2004) (finding that a legitimate internal investigation of a police officer's conduct could not suffice to demonstrate retaliation at the *prima facie* stage or as evidence of pretext).

III.

For the first time on appeal, Harris raises a claim that he was terminated because of his close friendships with members of the Gabbard family, who were disliked by Sheriff Jones. As a threshold matter, Harris has waived this claim by failing to raise it below. "Issues that are not squarely presented to the trial court are considered waived and may not be raised on appeal." *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir.), *petition for cert. filed*, 77 U.S.L.W. 3645 (U.S. May 7, 2009) (No. 08-1384) (quoting *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1172 (6th Cir. 1996)). Even if Harris had not waived the claim, his right of intimate association claim is properly characterized as duplicative of his retaliation claim rather than as a separate claim. *See Henley v. Tullahoma City Sch. Sys.*, 84 F. App'x 534, 543 (6th Cir. 2003) (finding that in order to maintain a separate freedom of association claim, a plaintiff must show that the adverse action would have been constitutionally impermissible even if the defendants did not have a retaliatory motive). In *Henley*, the plaintiffs were prevented from playing on their school's basketball team and alleged that it was in retaliation for their parents' complaints. The panel found that excluding the plaintiffs from the basketball team was not constitutionally impermissible absent a retaliatory motive because it did not "unduly intrude[] on their familial relations or friendships." *Id.* The defendants' actions in that case did not interfere with the plaintiffs' intimate associations but were instead collateral effects of the defendants' alleged retaliation. *Id; see also Sowards*, 203 F.3d at 433 n.2 ("[I]t is clear that . . . the right of intimate association is protected only where the plaintiff alleges an undue interference with a protected intimate relationship."). Likewise, Harris's termination would not be constitutionally impermissible if made with a pure motive. A termination of employment cannot be characterized as an action that is likely to constitute an "undue intrusion" into the intimate associations of the

10

terminated employee. *See Adkins v. Bd. of Educ.*, 982 F.2d 952, 956 (6th Cir. 1993) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984)).  Therefore, we find that Harris is unable to establish a separate freedom of association claim and to avoid summary judgment on that basis. *See Henley*, 84 F. App'x at 543-44; *Ward v. Athens City Bd. of Educ.*, No. 97-5967, 1999 U.S. App. LEXIS 22766, at *15-20 (6th Cir. Aug. 11, 1999) (finding that plaintiffs could not establish a First Amendment freedom of association claim where the claim was not based on interference by the school board in their family relations).

IV.

For the foregoing reasons, we affirm the district court's grant of summary judgment to the defendants.